VICKSBURG AND MERIDIAN R. R. Co. *v.* T. M. SCANLAN.

1. RAILROAD COMPANY. *Failure to stop train. Declaration of conductor as evidence.*
   S. bought a ticket on the V. & M. R. R. between A. station and L. station, and took passage at the former place for the latter. The train failed to stop at L. but took S. to a station beyond his destination. He sued the railroad company for damages. On the trial S. testified that he asked the conductor in charge of the train referred to if he would stop for him to get off at his gate, it not being a station, and that the conductor replied, "No, sir! I won't stop for you there, or anywhere else." This testimony was objected to as incompetent. *Held,* that it was admissible in determining the question whether the train was run by L. station willfully or inadvertently.

2. SAME. *Action against for failure to stop train. Punitive damages.*
   In the case above stated the court instructed the jury for the plaintiff that "if there was some element of fraud, malice, reckless negligence, or oppression, insult, rudeness, or willful wrong, or other cause of aggravation in the running of defendant's train by L. without stopping," they might give the plaintiff exemplary damages. *Held,* that this instruction is bad because it authorizes punitive damages if there was *some* element, however infinitesimally small, of any of the multitudinous things named, in running the train by L., and because it furnishes no guide for an intelligent consideration of the only question of controversy, to wit: Whether the running by was willful or inadvertent. In *R. R. Co.* v. *Scurry,* 59 Miss. 456, the above

instruction was given at the instance of the defendant (appellant in this court) and the court was not called on to consider the accuracy of the language employed, as if invoked by a plaintiff.

APPEAL from the Circuit Court of Newton County.

HON. A. G. MAYERS, Judge.

In July, 1885, T. M. Scanlan and family purchased tickets and took passage on a freight train of the Vicksburg and Meridian R. R. Co. to go from Armistead station to Lawrence station. The train for some reason failed to stop at Lawrence station, and Scanlan and family were carried on to Newton, five miles beyond. Scanlan brought this action for damages against the railroad company. On the trial the plaintiff showed that when the conductor came to take up the tickets that he (Scanlan) asked the conductor to put him off at McCain's gate, and that the conductor replied in a very rude manner, " No, sir! I won't stop for you there, or anywhere else ;" that after passing Lawrence the train stopped at a tank a few miles beyond, and that he asked the conductor to have his train backed to Lawrence, which the conductor declined to do ; that the conductor, he thought, was partially drunk.

The defendant showed that the night was rainy and the track slippery ; that the supply of sand on the engine was exhausted ; that one of the brakemen on the train had just been injured in an accident and required the attention of the conductor ; that the train was behind ; that the train was heavy and Lawrence station at the top of a grade ; that the conductor was busily engaged in trying to keep the train moving; that the plaintiff was offered the privilege of returning to Lawrence on a passing train, and that the actual damage suffered by plaintiff amounted to only a few dollars.

The second instruction given for the plaintiff was as follows : " If the jury should believe, from the evidence, that there was some element of fraud, malice, reckless negligence, or oppression, insult, rudeness, or willful wrong, or other cause of aggravation in the running of defendant's train by Lawrence station without stopping to permit plaintiff to get off, the jury are authorized in

assessing the damages to allow not only just compensation for the actual damages sustained by the wrong complained of, but the jury are also authorized to inflict such punishment as they may think proper by way of exemplary damages for defendant's disregard of the public duty."

The jury found for the plaintiff, and assessed his damages at eight hundred dollars. The defendant appealed.

*W. L. Nugent,* for the appellant.

1. The first error relates to the manner of the conductor in answering an unreasonable request, not as it *was* but as the plaintiff *believed it to be.* He says the conductor answered in a very rude *manner.* He did not undertake to say what his manner was; how he posed; what was the appearance of his eyes, and what the intonation of his voice, etc. Nor was it stated what he said beyond the very civil answer given to an unreasonable request. This answer was given "*in a very rude manner,*" says the witness, and the busy minds of twelve men are turned loose to inquire what was meant or said by the witness; each in turn, doubtless, making the manner "insulting and annoying" in the extreme. I do not well see how the court could allow the evidence to go to the jury. It was not competent, and was well calculated to inflame the minds of the jury against the corporation. 2 Best on Evidence, § 511. The conclusion reached by the plaintiff from the actual manner of the conductor was clearly wrong in the light of the whole transaction.

2. The second instruction for the plaintiff was improper because there was no element of fraud, malice, reckless negligence, etc., etc., and the jury was left in the dark as to *what constituted such elements.* The case was not one in which *exemplary damages* could be inflicted unless justice has become a plaything when corporations are sued.

*M. H. Whitaker,* for the appellee.

The second instruction for appellee, plaintiff below, propounds the law correctly as to exemplary damages, it having been established by proof that the conductor's deportment was rude and insulting, and that he was guilty of a willful wrong.

This being such a train as is characterized in § 1054, Code of '80,

it was necessary to entitle the appellee, Scanlan, to recover to prove *gross* negligence, and this having been clearly done, it follows that if any of the necessary elements which would authorize exemplary damages were proven to the satisfaction of the minds of the jury to exist, then the mere fact that the appellee was traveling on a freight train would not relieve the railroad company of exemplary damages if the jury should see proper to inflict them.

It was not necessary to allege in the declaration that the conductor was rude and insulting in order to make the proof—the right of action having been established, the balance follows as an incident—the declaration was sufficient. *N. O., J. & Gt. N. R. R. Co.* v. *Hurst*, 36 Miss. 660 (see opinion and declaration in said case); *Heirn* v. *McCaughn*, 32 Miss. 17, cited; 2 Greenleaf Ev. (7th ed.), § 253, note 2; Sedg. Dam. 39.

*S. A. Witherspoon*, on the same side.

The first error insisted on is the admission of the testimony of Scanlan as to the reply of the conductor that he would not put Scanlan off at a certain house. Nothing could have been more relevant to the issue. The suit is for a failure to put the appellee off at Lawrence. The failure is clearly proven. But we went further and proved that the conductor had expressed the intention not to put the plaintiff off anywhere; that he not only failed to perform his duty, but expressed a previous determination not to do so. And for this it is seriously argued that the case should be reversed. The conductor in so expressing his intention did it in a rude manner, and because the rudeness is not photographed in the record, it is said there is error. The witness gave the exact language of the conductor, and said that it was not the language of the conductor that constituted the insult, but the tone and manner of speaking was insulting. The language itself, though, if spoken in one tone, would be respectful and polite, yet is manifestly capable of being spoken in a tone that would be insulting. This peculiar tone is well known to all persons except corporations, is a fact which any witness could swear to, but which no man could possibly describe.

CAMPBELL, J., delivered the opinion of the court.

The question in this case is whether the train was run by Lawrence station *willfully*, in disregard of the right of the plaintiff to have it stopped there, so that he might have got off. If so, it was a case for exemplary damages, but if the station was passed through forgetfulness on the part of the conductor, under circumstances of palliation for his neglect, only compensatory damages were allowable. To this single inquiry should the attention of the jury have been directed. As pertinent to this question, evidence of the declaration of the conductor as to his purpose not to stop anywhere was admissible, as indicating predetermination not to stop at Lawrence station; and, because there was controversy whether the failure to stop was willful or inadvertent, the court rightly refused the instructions asked by the defendant; and those given for the plaintiff are free from error, except the second, which is not correct. It announces that "if there was some element of fraud, malice, reckless negligence, or oppression, insult, rudeness, or willful wrong, or other cause of aggravation in the running of defendants' train by Lawrence station without stopping," the jury might allow exemplary damages. A particular objection to it is that it authorizes punitive damages if there was *some* element, however infinitesimally small, of any of the multitudinous things named, in running the train by the station. Another is that it furnishes no guide for an intelligent consideration of the only question of controversy arising on the facts sworn to. What is meant by the expression, "some element of other cause of aggravation"? It conveys no idea to our minds, and we assume that it was not calculated to instruct and aid the jury. It licensed the allowance of punitive damages, if the jury thought there was in the running of the train by Lawrence station without stopping any element of several things strung together in the instruction so as to lay the basis for punitive damages for anything the jury might treat as being "some element" of the several things mentioned.

It is true that this instruction is a copy of the first instruction given for the defendant in *Railroad Co.* v. *Scurr*, 59 Miss. 456,

and which this court declared announced the proper rule on the subject of exemplary damages; but an instruction may be free from objection, or subject to it, according to the position of the party obtaining it.   If the railroad company invoked the proposition that there must have been a total absence of every element of the many things named to save it from punishment none could object; and, besides, the approval by this court was given, not to the particular phraseology of the instruction, which it was not called on to criticise, as the defendant which asked the instruction was the appellant, but to the rule it announced, viz.: that there should be none but actual damages if there were no willful wrong.   It is remarkable that judges and writers in dealing with the subject of exemplary damages have employed a multitude of words as descriptive of the states of case proper for such damages, a habit adverted to in the case cited, but this does not justify stringing together in an instruction on the subject all of the expressions used by different writers in the effort to express the rule applicable to punitive damages.   An instruction should be pertinent to the issues to be tried by the jury, and framed so as to enlighten and guide the jury in disposing of such issues.   It is manifest that the counsel and court below were misled in this case by finding this instruction approved in the case cited from 59 Miss., and failed to observe the important distinction springing from the fact that in that case the instruction was given at the instance of the defendant, and that the court was not called on to consider the accuracy of the language employed in it when invoked by a plaintiff.

*Reversed and new trial granted.*