CHAS. C. CANFIELD, Respondent, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellants.

**Kansas City Court of Appeals, November 5, 1894.**

1. **Assault and Battery:** TRESPASS ON PREMISES: NECESSARY FORCE. If one intrudes himself upon premises where he has no right to be, then the owner may order him away; and, if he refuses to go, then he may use such force as may be reasonably necessary to expel the intruder. But he can not assault such intruder under the circumstances shown in this case.

2. ——: MASTER AND SERVANT: MASTER'S LIABILITY. The master is liable for all acts committed by his servant, whether lawful or unlawful, within the scope of the authority conferred upon him by the master, either expressly or by fair implication. The test of the responsibility being, not whether the particular act was rightly done and specifically authorized, but whether it was within the scope of the agent's authority.

3. ——: ——: ——. If a servant in performance of the master's work which has been entrusted to him, wrongfully assault a third person, both master and servant are liable in damages and may be joined in the same suit.

4. ——: ——: WHEN AGENT NOT LIABLE. The superintendent of a railroad company may lawfully employ a subagent to keep strikers out of its offices and prevent their interference with the work of others who had taken the places which they had vacated, and he will not be liable for the wrongful manner in which such subagent performs the duties assigned him, unless the particular act which occasioned the damage is done by his orders.

5. ——: DAMAGES: EXEMPLARY. If an assault and battery is wanton and malicious, the jury may be instructed to allow exemplary damages, and an instruction to that effect is approved in this case.

6. ——: ——: ——. The amount of punitive damages is always left with the jury, subject to be reviewed by the court, if excessive.

7. ——: ——: ——: MASTER AND SERVANT. A railway company is liable in exemplary damages for the wanton and malicious conduct of its servant which was done and performed within the scope of his employment, and that, too, regardless of any prior command or subsequent ratification.

*Appeal from the Grundy Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED in part and REVERSED in part.

*M. A. Low, W. F. Evans* and *Geo. Hall* for appellants.

(1) A principal is not responsible for the torts of his agent, unless the act constituting the tort was authorized or ratified, and in actions brought for damages resulting from the tort the question of authority

or ratification should be submitted to the jury. *Edelman v. St. Louis Transfer Co.*, 3 Mo. App. 503; *Hogan v. Railroad*, 3 R. I. 88; *Croker v. Railroad*, 36 Wis. 658. (2) The court should never, by instructions or otherwise, intimate to the jury what damages the evidence authorizes. An instruction that they may allow any amount up to a certain sum is a clear and positive instruction on the weight of the evidence, and should not be given. *Willis & Bro. v. McNeill*, 57 Tex. 465; *Bryan v. Acee*, 27 Ga. 87. (3) In assessing damages, the jury should be guided by the evidence, and should not be permitted to assess them as their whim or caprice may suggest. The different elements of damages should be pointed out, and if exemplary damages are authorized by the evidence and pleadings, circumstances which will mitigate or aggravate the wrong should be pointed out by the court, and the jury should be restricted to a consideration only of those designated. *McGowan v. Railroad*, 109 Mo. 519; *Rolling Mills Co. v. Morrissey*, 111 Ill. 64; *Railroad Co. v. Sykes*, 96 Ill. 96; *Raines v. Railroad Co.*, 71 Mo. 164; *Pearsons v. Railroad*, 94 Mo. 286; *Matkey v. Gregg Bros. Co.*, 19 Mo. App. 107; *McGinnis v. Railroad*, 21 Mo. App. 399, 415. (4) A party should not be permitted to profit by his own unlawful act. If his conduct is unlawful, and is one of the controlling elements that causes him injury, the law will not award him compensation, nor endeavor to say who was the greatest in fault. *Galbraith v. Fleming*, 60 Mich. 403; *Taylor v. Clendening*, 4 Kan. 524; *Railroad v. Gants*, 38 Kan. 608, 623. (5) A carrier is not bound to transport on its train or to furnish depots and waiting rooms for a person whose object is to interfere with or injure the business of the carrier or to incite its agents to quit its service. Wheeler, Modern Law of Com., 157; Angell on Carriers, secs. 525, 529; Hutchinson on Carriers,

secs. 539, 540; *Jencks v. Coleman*, 2 Sumn. 22; *Thurston v. Railroad*, 4 Dill. 322. (6) In civil actions for injuries resulting from torts, when the offense is punishable under the criminal laws, exemplary damages as a punishment or example, can not be awarded. So far, the criminal laws of this state have proved ample for the punishment of criminals, and individuals have not been authorized to maintain, for for their personal benefit, actions to punish persons for offenses committed by them. *Murphy v. Hobbs*, 7 Col. 541; *McKeon v. Railroad*, 42 Mo. 79; *Freidenheit v. Edmundson*, 36 Mo. 226; *Corwin v. Walton*, 18 Mo. 71; *Fay v. Parker*, 53 N. H. 342; *Stuyvesant v. Wilcox*, 52 N. W. Rep. 465; Field on Damages, 73, 74, 75 and 76. (7) The damages awarded in this case are clearly the result of prejudice and passion. *Goetz v. Ambs*, 22 Mo. 170; *Willis & Bro. v. McNeill*, 57 Tex. 465, 479; *Railroad v. Nichols*, 9 Am. and Eng. R. R. Cases, 361, 365; *Railroad v. Ashcroft*, 48 Ala. 15, 33. (8) "Exemplary damages, when allowed, should be in proportion to the actual damages sustained." *Railroad v. Nichols*, 9 Am. and Eng. R. R. Cases, 361, 365; *Railroad v. Ashcroft*, 48 Ala. 15, 33; *Willis & Bro. v. McNeill*, 57 Tex. 465, 479.

*J. S. Parker* with *Harber & Knight* for respondent.

(1) The facts proved fully sustained respondent's position. The instructions given on behalf of respondent were the law, and applicable to the allegations in the petition made, and facts in proof. *Railroad v. McKee*, 99 Ind. 519; 50 Am. Rep. 102; *Lynch v. Railroad*, 90 N. Y. 77; *Fortune v. Turner*, Sup. 19 N. Y. S. 598; *Oakland City Agr. and Ind. Soc. v. Bingham*, 31 N. E. Rep. (Ind.) 383; *Dickison v. Waldron*, 34 N. E. Rep. (Ind.) 506–537, C. L. J. 270; *Perkins v.*

*Railroad*, 55 Mo. 201, 213, 214; *Malecek v. Railroad*, 57 Mo. 17, 18; *Boogher v. Life Ass'n of Am.*, 75 Mo. 319; *Hunt v. City of Boonville*, 65 Mo. 624; *Woodward v. Railroad*, 85 Mo. 143; *Travers v. Railroad*, 63 Mo. 421; *Brown v. Railroad*, 59 Mo. 27; *Snyder v. Railroad*, 60 Mo. 413; *Graham v. Railroad*, 66 Mo. 536; *Garretzen v. Duenckle*, 50 Mo. 107; *Faber v. Railroad*, 32 Mo. App. 378; *Railroad v. Harris*, 122 U. S. 597; *Bank v. Bank*, 59 Fed. Rep. 338; *Railroad v. Rosenzaring* (Pa.), 4 Cent. 712; 1 Sutherland on Damages, pp. 737 to 750; Webb's Pollock on Torts, pp. 219, 220; *Franz v. Hilderbrand*, 45 Mo. 122; *Riely v. McCord*, 21 Mo. 285–291; *Corwin v. Walton*, 18 Mo. 71; *Goets v. Ambs*, 27 Mo. 28; *Buckley v. Knapp*, 48 Mo. 162; *Brazil v. Peterson*, 44 Minn. 212; *Gillett v. Railroad*, 55 Mo. 322; *Trauerman v. Lippencott*, 39 Mo. App. 478. (2) *First.* The assault by Fox being unwarranted, "wanton and malicious" (to say nothing of it being inflicted by the express authority and direction of defendants) exemplary damages were recoverable. *Buckley v. Knapp*, 48 Mo. 152; *Perkins v. Railroad* 55 Mo. 202; *Beck v. Dowell*, 111 Mo. 506; *Second.* And the jury were the best judges, made so by the constitution, of the amount of damages it would be necessary to inflict upon defendant, as a compensation to plaintiff, a punishment to defendant, and a warning to others. See cases above cited, especially *Trauerman v. Lippencott*, 39 Mo. App. 478; *Lanius v. Druggist Pub. Co.*, 20 Mo. App. 12; *Travers v. Railroad*, 63 Mo. 421; *Beck v. Dowell*, 111 Mo. 506; 1 Sutherland on Damages, pp. 745, 746. *Third.* As to the province of the jury generally in assessing damages, we cite: *Hepburn v. Du Bois*, 12 Peters, 375; *Railroad v. Rauh*, 49 Fed. Rep. 696; *Fericks v. Bermes*, 22 Fed. Rep. 424; *Smith v. Whittier*, 30 Pac. Rep. (Cal.), 529; *Whalen v. Railroad*,

60 Mo. 323; *Porter v. Railroad*, 71 Mo. 66; *Griffith v. Railroad*, 98 Mo. 168; *Melor v. Railroad*, 105 Mo. 455; *Railroad v. O'Brien*, (Col.) 27 Pac. Rep. 701; s. c., 16 Col. 219; *Railroad v. Dorsey*, 18 S. W. Rep. 444; *Railroad v. Ryle* (Ky.) 18 S. W. Rep. 938; *The Washington and The Gregory v. Ann Cavon*, 19 Wall. 513–516 (19 vol. p. 787, L. C. P. Co); The "Junita," 3 Otto, 337–340 (23 U. S. 930 L. C. P.); *Penn Co. v. Ray*, 12 Otto, 451–460; 16 Am. R. 879; 18 Am. R. 60; 20 Am. R. 106; *Heddles v. Railroad* (77 Wis. 228); 20 Am. S. Rep. 106; *Burdict v. Railroad*, 27 S. W. Rep. (Mo.) 453. (3) *First*. It is only for error committed against the appellant materially affecting the merits of the action, that authorizes this court to reverse a judgment. R. S. 1889, sec. 2303. *Second*. Instructions given at the instance of the appellant, although erroneous and inconsistent with other instructions given in the case, will not cause a reversal, being error in appellant's favor. *Reardon v. Railroad*, 114 Mo. 384; *State v. Strattman*, 100 Mo. 540, 551; *Church v. Railroad*, 23 S. W. Rep. (Mo.), 1056.

GILL, J.—This is an action for damages because of an assault on the plaintiff's person, committed by defendant Fox, December 22, 1892, at Altmont station, in Davies county, on the line of the Chicago, Rock Island & Pacific Railway. At the trial below there was a verdict and judgment for $2,000 against all the defendants and they have appealed.

The material facts are undisputed. For some time prior to December 8, 1892, plaintiff, Canfield, had been in the employ of the Rock Island Railway Company as ticket agent and telegraph operator at Cameron, Missouri. During the time, too, and since, defendant Cook was assistant general superintendent of the line, defend-

Canfield v. The C., R. I. & P. R'y Co.

ant Tinsman was chief train dispatcher, while Fox was a brakeman.

On said December 8, 1892, Canfield, as a member of the "Order of Railway Telegraphers," engaged in a "strike" and left the employment of the railway company. These strikers had been annoying the railroad company by visiting its stations and inducing the telegraph operators, not connected with the O. R. T., to join them and leave the service of the company. To obviate this, Assistant Superintendent Cook, detailed Fox, the brakeman, and sent him out on the road to watch for these strikers, and when any were found meddling with the operators he, Fox, was authorized to drive them off, or expel them from the company's offices. Fox had been a prize fighter in Iowa, which it was supposed qualified him for the work assigned. His duties were succinctly stated in the following question and answer given at the trial:

"*Q.* Then your duties were to prevent such persons as you might determine in your own way as to belong to the Order of Telegraphers, or was talking improperly with any of defendant's operators, from so doing, were they not? *A.* Yes, sir; and, if necessary in my opinion, to resort to force to prevent any such persons from talking to defendant's operators or visiting the private offices."

On December 22, Canfield appeared at Altamont station, and his purpose was, very clearly, to induce the operator there to join the O. R. T. and go out on the strike. As to what occurred there, he and Fox disagree, in some minor particulars. Canfield says he was standing in the public waiting room talking to the agent when the assault was made. "I was," he testified, "talking there when this man (referring to Fox) came up and either touched me on the shoulder, or I

heard a step. I didn't think anything about it. I turned to see who it was. As I turned he struck me with one hand; he had a gun in the other drawn on me. He says, "Take that you —— of an O. R. T. man; get out of here.'" The witness then proceeds to detail his injuries; that he left the depot, etc.

Fox, after saying that he found Canfield in the private office of the company talking to the operator about the strike, etc., thus details the circumstances of the assault:

"*Q.* Did you speak to Canfield while he was in that private office? *A.* Yes, sir.

"*Q.* What did you say to him? *A.* I asked him what business he had in there.

"*Q.* What did he answer, if anything. *A.* He didn't answer anything; he just stood and looked at me.

"*Q.* Was that before or after this 'scab' talk he had with the operator? *A.* It was afterwards.

"*Q.* Did you say anything more to him? *A.* I told him to get out.

"*Q.* Well, what did he do? *A.* He didn't say anything; he didn't go.

"*Q.* What did you do? *A.* I hit him.

"*Q.* How often, whereabouts and what with. *A.* I hit him with my fist once alongside of the nose.

"*Q.* Did you knock him down? *A.* No, sir; he staggered up against the bill press that was standing there.

"*Q.* Did you do or say anything else to him? *A.* I told him to clear out of there and let these operators alone.

"*Q.* Did he go then? *A.* Yes, sir."

1. Counsel for defendants have devoted much of their brief and argument to alleged erroneous instructions given by the trial court. As we view it a dis-

cussion of these is unnecessary, except, it may be, as to the measure of damages. For, in our opinion, the evidence, considered in the most favorable aspect for the defendants, makes a clear case for damages against Fox and the railway company, whose servant he (Fox) was; while it fails *in toto* to fasten any liability on defendants Cook and Tinsman.

That Fox committed a legal outrage on the plaintiff, and for which he is bound to respond in damages, can not be denied. The assault can not be justified under the law, even admitting the facts to be as he (Fox) relates them. Assume it to be true that Canfield had wrongfully invaded the privacy of the railroad office, and was wrongfully interfering with the company's employees in the discharge of their duties, and yet his, Fox's, conduct was unwarranted. He asked Canfield what he was doing there, and ordered him out; says that Canfield simply stood still, said nothing, and looked at him (Fox). Thereupon, without more, he, Fox, struck Canfield in the face. If the plaintiff was intruding himself where he had no right to be, then Fox may have ordered him away and, if he refused, then Fox would have been justified in using such force as was reasonably necessary to expel him; but there was nothing in the circumstances to warrant this brutal assault.

As to the defendant railway company, it was clearly liable for the assault, because the same was committed by its agent or servant while in the performance of the work entrusted to him. It is now the well settled rule, "that the master is liable for all acts committed by his servant, whether unlawful or not, that are within the scope of the authority conferred upon him by the master either expressly or by fair implication." Wood on Master & Servant, sec. 309. See, also, *Boogher v. Life Ass'n*, 75 Mo. 319, 324;

*Snyder v. Railroad,* 60 Mo. 413; *Lynch v. Railroad,* 90 N. Y. 77; *Evansville, etc., R'y Co. v. KcKee,* 99 Ind. 519. The language used in the case last cited is pertinent here: "A corporation which selects an agent and gives him charge of a special department of its affairs is responsible for the acts of the agent performed while engaged in the line of his duties, although the particular act may not have been authorized. This responsibility is not confined to acts rightfully performed, but extends to such as are wrongfully done. The test of responsibility is not, whether the particular act was rightfully done and specifically authorized, but whether it was within the scope of the agent's authority." Here the proof (coming too from the sworn statements of the railroad superintendent) is that Fox "was instructed to keep them (the strikers) out of our offices, and to order them out if they went in—not only to order them out, but to put them out, and if necessary to use physical force, the watchman to be his own judge about that part of it." I repeat this testimony to show that this man Fox was entrusted by his employer with large discretion as to the manner of performing his duties. What he did, then, was the act of his employer, his trespasses while in the performance of these duties were the trespasses of the railway company, and for injuries flowing therefrom it must be responsible.

We hold, then, that, under the testimony considered in its most favorable light for the defense, a clear case was made against the defendants, Fox and Railway Company. The servant while in the performance of the master's work which had been entrusted to him wrongfully assaulted a third person; and for this tort either or both are liable in damages, and both may be joined in the same suit. Wharton on Agency, sec. 546; Wood on Master and Servant, sec. 325.

2. But we know of no principal of law that will impose a liability on defendants Cook and Tinsman for this assault. The sum and substance of their offending seems to be that they, having in charge the business of the railroad company and acting as its agents— the one as assistant superintendent and the other as general train dispatcher—employed Fox. There is nothing in the evidence tending to inculpate them in the wrong committed. They were not present aiding or abetting Fox, nor is there anything here to show that they advised the commission of any wrong. The most that can be said of these agents is that, acting for their corporate principal, they engaged this man Fox to visit the different stations along the road and keep the striking operators out of the company's private offices, so that the employees of the company would not be disturbed in the transaction of its business. This was, in itself, lawful. The wrong consisted in the *manner* in which this subagent performed the duties assigned him—not that he engaged in a work unlawful of itself. While these strikers had an undoubted right to quit the service of the defendant company, they yet had no right to intrude themselves into its private offices and interfere with the work of others who had taken the places which they (the strikers) had vacated. As to the liability of an agent under these circumstances, an eminent author says: "No action will ordinarily lie against an agent for the misfeasance, or for the negligence of those whom he has retained for the service of his principal by his consent or authority, any more than it will lie against a servant who hires laborers for his master at his request, for their acts; unless, indeed, in either case, the particular acts which occasion the damage are done by the orders or directions of such agent or servant. The action, under other circumstances, must ,be brought

either against the principal or against the immediate actors in the wrong." Story on Agency [9 Ed.], sec. 313.

3. Counsel for defendants further assail the judgment on account of the damages awarded—objections being taken both as to the instruction in that behalf, as well as the amount of the verdict. At plaintiff's instance, the court told the jury, "that in assessing plaintiff's damages, if they find for him, they are not limited to the physical injury inflicted, or shame, humiliation or disgrace caused plaintiff (if any), by said acts and conduct of said Fox, but they may, in addition thereto, if they find the assault of plaintiff by said Fox was wanton and malicious (and, by the term malicious, is not meant spite or ill will, but the intentional doing of a wrongful act without just cause or excuse), they may allow such further damages, known in law as exemplary, as will be a punishment to defendant and a wholesome warning to others, in all not to exceed, however, $2,000."

After a careful consideration of the argument of defendant's counsel, we fail to discover, either in the form of this instruction or in the extent of the damages awarded, any substantial error. In actions of this nature, the conduct and motives of the defendant are always open to inquiry in determining the amount of damages. "If in committing the wrong complained of he acted recklessly, oppressively, insultingly or wilfully and maliciously, with a design to oppress and injure, the jury, in fixing the damages, may disregard the rule of mere compensation; and beyond that, may, as a punishment of the defendant, and as a protection to society against the violation of personal right and social order, award such additional damages as in their discretion they may deem proper." 1 Sutherland on Damages [2 Ed.], sec. 392.

The amount, too, of such punitive damages is always left to the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case. Verdicts, however, in these cases will be reviewed by the courts; and if it appears manifest that the amount is grossly excessive, that is, so large as to carry conviction that the jury was controlled by passion or prejudice, then the verdict should not be allowed to stand. But under this rule we are not prepared to condemn the verdict. If the facts were as related by the plaintiff (and of this the jury were the sole judges), then the conduct of Fox was most oppressive, insulting, wanton and malicious. According to plaintiff's testimony, he was standing in the public waiting room of the station, when Fox approached him from the rear, touched him or called his attention, and without more, struck the plaintiff in the face, causing the blood to flow, and accompanying the blow with vile oaths and a threatening display of a revolver. So, too, is the defendant railway company liable in exemplary damages for the wanton and malicious conduct of its servant Fox, which was done and performed within the scope of his employment, and that, too, regardless of any prior command to do the act, or subsequent ratification thereof. *Haehl v. Railroad*, 119 Mo. 325.

After a patient consideration of all the points made in brief, we discover no substantial reason for disturbing the judgment as to defendants Fox and the railway company. We, then, affirm the judgment as to said defendants; but, for reasons already expressed, the judgment as to defendants Cook and Tinsman will be reversed. All concur.