YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* PETER
WILLIAMS.

## [39 South. Rep., 489.]

1. TRIALS. *Instruction. Construction.*

> The court in passing upon a single instruction to the jury should
> give the words used therein their usual and customary signifi-
> cance.

2. SAME. *Harmless error.*

> The court will not disturb a verdict, although particular words in
> an instruction are subject to criticism, if it be manifest that the
> jury were not misled by it.

3. SAME. *Instructions construed together.*

> The instructions given in a case must be construed together, and if,
> considered as a whole, the law was fairly given in the instruc-
> tions, the verdict should not be vacated because one of them,
> when considered alone, may be subject to criticism.

4. SAME. *Estoppel to allege error.*

> A party who has asked and been given an instruction containing
> inapt words cannot complain of his adversary's instructions
> because they contain the same words.

5. SAME. *Exemplary damages.*

> An instruction, otherwise proper, authorizing the jury to award
> such sum as they shall "see fit" as exemplary damages, is not
> erroneous because it leaves the amount of such damage solely
> to the discretion of the jury.

6. SAME. *Carriers. Injuries to passenger.*

> An instruction, in an action against a carrier for an assault by
> its conductor on a passenger, which authorizes a verdict for the
> passenger on finding that he, while pursuing his journey, "was
> set upon by the conductor and insulted and violently handled, or
> was wrongfully ejected from the train on which he had a right
> to be," is not open to the objection that it does not charge that
> the action of the conductor must have been wrongful or unpro-
> voked; the words "set upon" necessarily implying an unwar-
> ranted attack, and the word "insult" conveying the idea of af-
> fronts by profane or obscene words, and the words "violently
> handled" indicating the result of the physical assault.

FROM the circuit court of Sharkey county.

HON. GEORGE ANDERSON, Judge.

Williams, the appellee, was plaintiff in the court below; the railroad company, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mayes & Longstreet,* and *Charles N. Burch,* for appellant.

The error in the third instruction is this: It is couched in the alternative. It says, in effect, that the plaintiff is entitled to recover if the jury believe from the evidence either that the plaintiff, while pursuing his journey, was set upon by the conductor and insulted and violently handled, or was wrongfully ejected from the train upon which he had a right to be. Here there is a distinct antithesis made by the instruction. Under the first branch of it the whole case is made to turn upon the bare proposition that the conductor insulted and violently handled the plaintiff, without any reference whatever to the question as to whether in so insulting and violently handling the plaintiff the conductor had such provocation or had such reasonable cause to apprehend a personal assault upon himself as would excuse him in so doing. It is perfectly clear that that was the effect of the instruction. It is true that in the second proposition the word "wrongfully" is used; but that word is by every rule of construction, and by the common understanding of the English language, attributed solely to the following proposition about the plaintiff's ejection from the train, and there is no corresponding word as to the first branch of the proposition. In short, the jury were told that the plaintiff was entitled to recover if either one of two things happened: (1) if the defendant insulted and violently handled plaintiff (and this without any qualifying word as to whether defendant had provocation or excuse, or no); (2) if the plaintiff was wrongfully ejected.

If the instruction had stood upon the second branch alone, then it would have required the jury to find the second proposition to be true—that is, that the man had been wrongfully ejected. But it does not so stand; and under this instruction the plaintiff was entitled to recover if the jury should find that he had been insulted and violently handled, and that without any reference to the question whether the conductor had justification or excuse and without any reference to the question whether he had been wrongfully ejected or not.

Now, the instructions authorizing the imposition of damages must properly set forth the facts which justify such imposition, and if the plaintiff is so negligent as to frame his instructions so as to authorize the jury to find a verdict in his favor under conditions that would not justify such finding, there is reversible error.

The error in this case is all the more serious because the question at issue before the jury was as to whether the conductor had or had not received such provocation and excuse by the conduct of the plaintiff. Yet this instruction eliminates that consideration from the case absolutely.

Compare instruction three with instruction one, given by the court for the plaintiff. In number one the law was correctly set forth. But having correctly set forth the law, the plaintiff was not satisfied, apparently, but he wanted to get a still closer grip upon a verdict against the defendant; so he stuck in this third instruction, and left out of it the very facts which, if the jury had found in favor of the railroad company, would have justified a verdict for the defendant.

By this course the plaintiff, getting this third instruction, by his own act eliminates from the case all of the effective force of his own first instruction. If he were entitled to recover under the third, his first instruction was utterly useless, and imposed upon himself a burden which it was unnecessary for him to meet. To put the proposition differently, if the law is

correctly stated in his own first instruction, then it is incorrectly stated in the third, because the third omits certain obligations which by his first instruction he admits he was called to meet. *Potter* v. *Railroad Co.,* 46 Ia., 402; *Gamble* v. *Mullin,* 74 Ia., 99; *Jackson Township* v. *Sherra,* 8 Ind. App., 330; *Bridge Co.* v. *Eastman,* 7 Ind. App., 514; *Hill* v. *Aultman,* 68 Ia., 630.

The court also erred in giving for the plaintiff the second instruction. That instruction is on the subject of punitory damages. The vices in it are two. First, it authorizes the jury to find punitive damages on the sole condition that they find for the plaintiff, and then states that on that condition they may, in addition to the actual damages, find punitive damages. It fails to instruct the jury that they must, by their verdict and from the evidence, ascertain the fact that the plaintiff did suffer actual damages; and it fails to instruct the jury as to the principles of law on which alone they are authorized to find punitive damages. It puts the whole right of the jury to bring in exemplary damages on the bald proposition that they find for the plaintiff. This is error. The jury should have been more intelligently and properly instructed.

Moreover, the jury were instructed that in finding exemplary damages they were authorized to bring in "such sum as they may see fit, not to exceed the sum demanded." This is the exact language of the instruction which was condemned and held to be reversible in the case of *Railroad Co.* v. *Smith,* 82 Miss., 657 (s.c., 35 South. Rep., 168). The only question, therefore, open is whether the same rule applies to an instruction for the bringing in of exemplary damages. We submit that it does. It is true that if the legal conditions are met the jury have a discretion whether they will or will not bring in a verdict for exemplary damages, and the court has no right to instruct them that they shall bring in such a verdict. But the broad discretion which they have as to whether they will or will not bring in

a verdict for such damages does not import the idea that in fixing the amount of their verdict they have an arbitrary power. The damages should be assessed in the exercise of a sound, honest, and intelligent discretion in the light of the facts disclosed by the evidence, and the jury should have been properly instructed so to find. Under the language of this instruction the jury would have been fully authorized to bring in a verdict for a billion dollars, if they saw proper so to do. 12 Am. & Eng. Ency. Law, 54.

*McLaurin, Armistead & Brien,* for appellee.

The first proposition in the instruction, to the effect that plaintiff was entitled to damages if the jury believed that he was set upon by the conductor and insulted and violently handled, provided only for damages in favor of plaintiff if the jury believed that both conditions existed—that is, that the plaintiff was insulted and violently handled by the conductor. So we say, in this connection, it is not necessary to apply the word "wrongful" to these conditions, because any insult is essentially wrongful. In other words, if the conductor insulted and violently handled Williams, he, Williams, had a right of action. It would not necessarily be so if the instruction had left out the word "insult," because, as to violence standing alone and without insult, there may be some justification for violent handling.

Appellant says that the two propositions in one instruction constitute a complete antithesis. We submit that this conclusion is wholly incorrect. The meaning of "antithesis," according to the Standard Dictionary, is this: "A figure of speech in which strongly contrasted phrases or sentiments are balanced against each other." No such condition exists in this instruction, which simply told the jury that defendant was liable, on the one hand, if the conductor insulted and violently handled plaintiff, and, on the other hand, if he wrongfully ejected him from the train. Either condition might have existed without the other, or both

might have existed at the same time, and the evidence is ample in justifying the jury in the belief that either one or the other, or both, did exist.

Furthermore, the court will construe this instruction along with the other instructions. It has frequently been announced, and is elementary law in this state, that all of the instructions in a case must be construed together. This rule is forcibly announced in *Railroad Co.* v. *Smith,* 82 Miss., 657, cited in appellant's brief, wherein it is said: "The instructions for plaintiff and defendant should always be construed together, and, when so considered, should correctly announce the law and constitute one harmonious whole." *Railroad Co.* v. *Field,* 46 Miss., 573; *Insurance Co.* v. *Francis,* 52 Miss., 457.

When all of the instructions in this case are construed together, the further argument of this third instruction seems to us to be wholly unnecessary. Read the first instruction for plaintiff, which appellant admits is correct; then read the third and fourth instructions given for defendant. After reading these together, could any one imagine that the jury were misled by the strained and highly technical construction appellant has sought to put on said third instruction? Even if it be subject to the criticisms made against it, could it have done any harm in this case, where the plaintiff's testimony certainly fully warranted the result?

Argued orally by *Leroy Percy,* and *E. Mayes,* for appellant, and by *A. A. Armistead,* for appellee.

TRULY, J., delivered the opinion of the court.

The facts of this case as presented by the story of appellee are as follows: Appellee, having purchased a trip ticket over appellant's line, from Redwood to Vicksburg and return, boarded the train at the first-named place. Shortly after the train started, the conductor took up the going portion of the

ticket, returning the other part to appellee, and giving him a conductor's slip, indicating the point at which the passenger was to disembark. Subsequently, but in a very short while, the appellee, in passing from one portion of the train into another, was again accosted by the conductor, who again demanded payment of fare or delivery of a ticket. A protest by the appellee that he had already surrendered his ticket resulted in an altercation, in which violent and insulting language was used by the conductor, and which resulted in an assault being committed by the conductor upon appellee, in the course of which appellee was knocked down on the platform between two coaches, his head and face cut and bruised by the metal ticket punch in the hands of the conductor, and appellee's hand badly lacerated and injured. This assault continued until by the interference of another passenger the conductor was persuaded to desist. At the next station appellee was ejected by the conductor, who also alighted from the train, followed appellee a few steps, and again assaulted him with the same implement. Appellee from that placed walked to Vicksburg, and on the afternoon of the same day boarded the same train on its return trip, but, instead of tendering the return portion of his ticket, which he still had in his possession, paid his fare in money, and received a "cash fare slip" from the conductor. While on the train on this latter occasion, the porter of the colored coach attempted to force appellee to surrender the return portion of the ticket, and used violent and insulting language toward appellee, who was at that time also a passenger, having paid his lawful fare to his destination. Appellee's narrative of the occurrence was upon the trial corroborated by the testimony of several other witnesses, and was further strengthened by the production of the unused portion of the ticket and the conductor's slip and the cash fare slip which had been given him by the conductor on his return trip, and his story was accepted by the jury as true and so acted on. On behalf of the railroad company the only important testimony

was that of the conductor. According to that testimony the appellee himself provoked the difficulty by the wanton use of grossly insulting language, and the action of the conductor was simply to resent the insult and to defend himself from threatened assault. But many of the vital facts detailed by appellee stand absolutely uncontradicted in the record. There is no dispute that he did in fact deliver his ticket, and that the controversy arose when the conductor, through a misapprehension, made a second demand for his fare. There is no denial that an assault was committed by the conductor upon the passenger, and there is no contradiction of appellee's testimony that the injuries inflicted were of the nature and extent described; the main, if not the sole, point in dispute being as to who was the aggressor in the difficulty and whether the conductor's conduct was justifiable or excusable under the circumstances. On this single issue of controverted fact the jury accepted the story of the appellee, and awarded him damages in the sum of $5,000.

In considering this record on appeal, the testimony for the appellee having received the approval of the jury, we accept their findings as conclusive upon the facts and as settling against the appellant every issue arising from conflicting testimony. Viewed in the light of this rule, the record presents a case of outrageous and unwarranted invasion of the rights of a passenger, fully justifying the infliction of punitory damages. Here a passenger conductor, angered by his own mistake in collecting fares, curses an unoffending passenger; assaults him, striking him repeatedly with a metal instrument; ejects him from the train, and again strikes the unresisting man after he had alighted from the train. If such conduct on the part of the employes of common carriers, who are charged with the duty of caring for the comfort, providing for the safety, and watching over the welfare of the passengers intrusted to their care, were allowed to go unpunished, the traveling public would no longer be safe; and in such a flagrant case as is presented by this record, in which it appears

to us, from the most careful inspection, that the jury solved the disputed issue of fact in accordance with the great weight of evidence, we will not disturb the finding or reverse the case, unless it clearly appears that some material error of law has been committed on some point vital to the real justice of the cause on its merits.

The only two assignments of error presented by appellant arise on the instructions granted the appellee. The instructions complained of are the second and third. The third instruction charges the jury that if they believe that, while the appellee was a passenger, pursuing his journey, he "was set upon by the conductor and insulted and violently handled or was wrongfully ejected from the train upon which he had a right to be," then he was entitled to a verdict in his favor. The specific objection urged to this instruction is that it does not charge that the action of the conductor must have been wrongful or unprovoked. The argument is that, even if it were true that appellee "was set upon by the conductor and insulted and violently handled," yet nevertheless these facts were not of themselves sufficient to authorize the jury to return a verdict against the railroad company, because, it is said, all these things might be true and still the conductor be without blame, for the reason that if the appellee was the aggressor in the difficulty, or if he, by his violent conduct, provoked the controversy which resulted in his injuries, then the conductor, in common with every other man, had the right to protect himself from personal harm and to resent unprovoked insult. In passing on an objection of this character to a single instruction, there are two rules that must not be lost sight of. One is that the words employed must be given their usual and customary signification, and if it appears manifestly that the jury were not misled, the finding will not on that ground alone be disturbed, even though the composition of the charge, or the particular words or phrases employed, might be subject to criticism. If the meaning be clear, hypercritical crit-

icism of the verbiage employed will be ignored. The second rule is that the instructions for the plaintiff and the defendant must be considered together, and if, upon the whole, it appears that the law of the case was fully and fairly embodied in the instructions thus granted, the verdict will be upheld. *Railroad Co.* v. *West,* 66 Miss., 318 (6 South. Rep., 207).

Considering the third instruction, the correctness of which is here challenged, in the light of the first rule announced, we are unable to see that the jury could have been misled to the prejudice of appellant. Taking the expressions joined in this instruction, the plain intimation to be drawn therefrom, and beyond doubt the true meaning and intent of the charge, is to advise the jury that, if the conductor wantonly violated his duty to the passenger, then his principal, the railroad company, was liable in damages. To "set upon," "insult," and "roughly handle" are utterly antagonistic to the idea that the person guilty of such conduct was justifiable or acting in self-defense. The argument is at war with the usual and generally accepted meaning placed upon such terms. "Set upon," as here employed, can only mean "assault," and inescapably implies unwarranted attack; and, as shown by the collocation of words, "insult" conveys simply the idea of affront by the use of profane or obscene words used towards, or opprobrious epithets applied to, the person insulted. Without regard to its primitive or derivative meaning, certain it is that, used colloquially, as here, it reflects the idea merely of "scoffs and scorns and contumelious taunts." "To insult," says Webster, means "to treat with abuse, insolence, indignity, or contempt, by word or action;" and "violently handled," when construed in connection with the other expressions, simply indicates the result of the physical assault which, coupled with the insult, had been inflicted upon appellee. Taking the entire instruction as it stands, we do not believe that it was possible for anybody to have been misled as to its real meaning, especially when viewed in the light shed upon it by the

detailed statement of the circumstances surrounding this occurrence.

If any doubt remained as to whether this instruction was capable of misleading the jury to the prejudice of appellant, this would be removed entirely when, turning to the second rule for the consideration of instructions, we view the instructions for both sides as one entire charge. Appellant itself recognized that the word "insult" was to be given the meaning accorded it in common parlance, because by the fourth instruction requested and granted in its behalf the jury were charged that, if they believed that the difficulty was caused "by plaintiff grossly insulting the conductor," then the defendant was entitled to a verdict, thereby limiting and restricting the meaning of the term "insult" to verbal affronts; for it is not contended, even by the conductor, that appellee did more than to use insulting words as provocation. Hence it becomes manifest that learned counsel who represented appellant in the court below placed upon the term the very construction which is now so vigorously attacked by the learned counsel who represent appellant in this court. Conceding that the instructions are inaccurately drawn and that the words employed were inaptly chosen, still, as the appellant received the benefit of the identical legal proposition granted appellee, it cannot now be heard to complain. This is settled by previous adjudications of this court. *Wilson* v. *Zook,* 69 Miss., 694 (13 South. Rep., 351); *Insurance Co.* v. *Van Os,* 63 Miss., 431 (56 Am. St. Rep., 810). So far, then, as the third instruction for appellee is concerned, we think no harm was done, and we decline to disturb the finding on that account.

The other instruction, the granting of which for appellee is assigned as error, authorized the jury, if they found that the plaintiff was entitled to recover actual damages, and in addition believed from the evidence that the conduct of the conductor was "malicious, wanton, willful, or capricious," to also assess punitive damages—"that is, damages by way of punishment to

the defendant, so as to compel it to have a due and proper regard for the rights of the public." And, in the event they decided to award punitive damages, they were empowered to allow therefor such sum as they might "see fit," not to exceed the sum demanded. The point of attack on this instruction is directed at the use of the words "see fit." It is not denied that, if the facts stated in the instruction are proven, the defendant was liable to punitory damages. It is conceded that punitory damages were intended by way of punishment to the defendant and to compel it to have a due and proper regard for the rights of the public. It is urged, however, that the sum of such damages should not be such an amount as the jury may "see fit" to award, but that it should be such sum as is warranted by the evidence. It is contended that the rule announced by this court as applicable to actions for compensatory damages in *Y. & M. V. R. Co.* v. *Smith,* 82 Miss., 656 (35 South. Rep., 168), should be also controlling in actions for exemplary damages. It ·is the firmly established doctrine in this state that punitory or exemplary damages are always properly allowed where the trespass complained of or the breach of duty committed was malicious, wanton, willful, or capricious. *Telephone Co.* v. *Cassedy,* 78 Miss., 670 (29 South. Rep., 762). It is also well settled in this state that punitory damages are not awarded solely out of regard for the individual injured, but chiefly on account of a desire to protect the public and deter the repetition of such actions. *Wagner* v. *Gibbs,* 80 Miss., 63 (31 South. Rep., 434; 92 Am. St. Rep., 598); *Railroad Co.* v. *Mattingly* (Miss.), 37 South. Rep., 710. It is the long-settled and uniformly adhered-to rule in our jurisprudence that the amount of such punitory or exemplary damages is solely within the discretion of the jury, and, no matter what the sum of their finding might be, interference therewith, unless for exceptional causes, is discouraged— *New Orleans, J. & G. N. R. Co.* v. *Hurst,* 36 Miss., 660 (74 Am. Dec., 785); the reason being that, as the jury are the sole

judges of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative. This is the rule elsewhere, and is accepted as the sound principle by the most noted text writers. See Sedgwick on Damages, secs. 388, 1318; Sutherland on Damages, sec. 1092; Thompson on Trials, sec. 2065.

The reason for the difference in the rule obtaining in actions for compensatory and actions for punitory damages is plain. In an action for compulsory damages the jury are restricted to the facts in evidence, because there must be an admeasurement of the damages actually sustained as shown by the proof; and the existence of certain well-understood elements may be shown in proof to assist the jury in arriving at the sum which will make the party injured whole, by paying the damages or loss he has suffered. In this class of cases the theory of the law is that it is measuring out by the jury of such sum as will balance evenly the scales of justice and afford fair recompense for the injury inflicted. It is true in some cases, such as actions for physical pain and mental suffering, the rule of admeasurement is difficult, and the sum must be largely left to the discretion and sound judgment of the jury under the proven circumstances of the case. But the difficulty of the application cannot vary the controlling legal principle. In truth, one of the chief beauties of our system of jurisprudence is that the sum of such awards is submitted to discretion, sound judgment, and combined wisdom of jurors drawn indiscriminately from every walk of life. The wisdom of ages has never devised a better method to insure just results. But in all suits for actual or compensatory damages the jury are confined to a consideration of the facts in evidence, and by the consensus of their sound and sober judgment affix the amount which the peculiar circumstances of each particular case warrant. But the reason for the rule and the rule itself are different in actions sounding in punitory dam-

ages. There is no inflexible guide by which the jury can be conducted to their determination of the amount of the penalty which must be inflicted to adequately punish the culprit and protect the public. They hear the testimony, and if the case be one which legally warrants the infliction of exemplary damages, they, in the exercise of their own unconstrained discretion, decide whether they will impose any penalty. They cannot be directed or required to award any sum in punitory damages, no matter how flagrant the transgression of private or public right may be in the mind of the court. Neither, in cases where such damages are permitted, can their province of assessing such sum as they may think proper be invaded. They may refuse to award any sum in punitory damages, without regard to the evidence. They cannot do this in actions for compensatory damages; for in that class of cases, where the damages are shown, the jury may be peremptorily instructed to find for the party injured and assess actual or compensatory damages. So, in a case of punitory damages, where they decide that punishment shall be inflicted, the jury are the sole judges and may inflict such damages as they "see fit," sufficient to protect the public and deter the wrongdoer.

It is suggested in argument that the wealth of the wrongdoer may be shown in evidence, in order to permit the jury to consider that wealth in determining the amount of punitory damages to be awarded. This is true, but only upon the idea already advanced—that the jury may gauge the amount of the punishment necessary to be inflicted in order to deter a repetition of the offense; but it is in no proper sense introduced as testimony to influence the verdict. Evidence of the wealth of the wrongdoer is not admitted as tending even remotely to sustain the cause of the plaintiff. It becomes admissible only after proof first made that the trespass or injury complained of was committed wantonly, maliciously, willfully, or capriciously. Poverty or wealth becomes important, not as affecting liability—for

the poor man may be as guilty of wrongdoing as the millionaire—but as assisting the jury in affixing the punishment; for what would be a mere bagatelle to the latter might sweep away the entire estate of the former. So, too, the wealth of the defendant becomes important upon a review of an award of punitory damages, because it enables the court, looking over the record of a completed trial, to decide whether the jury, in fixing the punishment, went beyond their duty as protectors of the public and suffered themselves to be swayed by passion or led away by prejudice. In such extreme cases, reluctant as are the courts to disturb any finding of a jury awarding punitory damages, they will intervene in order to prevent the power of the jury being converted into an instrument of oppression. *Pullman* v. *Lawrence,* 74 Miss., 810 (22 South. Rep., 53); *Wagner* v. *Gibbs, supra; Telephone Co.* v. *Cassedy, supra.*

It is plain to our minds that the instruction, while inaptly phrased, does still in the main announce the true rule defining the duty and power of the jury with reference to punitory damages. It charges them, in effect, that if they decided that the plaintiff was entitled to actual damages under the conditions detailed in a previous instruction, and if they further believed "from the evidence" that the conduct of the conductor was malicious, wanton, willful, or capricious, then they might, in addition, find punitive damages in such sum as they should "see fit," not to exceed the amount sued for. The instruction also advises the jury that the punitive damages were "damages by the way of punishment to the defendant, so as to compel it to have a due and proper regard for the rights of the public." It is the exclusive province of the jury in proper cases to award such punitory damages as they "see fit," subject to the power of the court to set aside or reduce where it is manifest it was rendered through improper motives or is grossly excessive. The words "see fit," "deem proper," "in their discretion," and phrases of like import, have been repeatedly approved in similar

Statement of the case.

cases. *Railroad Co.* v. *Scanlan,* 63 Miss., 413; *Vicksburg* .v. *McLain,* 67 Miss., 4 (6 South. Rep., 774); *L. & N. R. R. Co.* v. *Maybin,* 66 Miss., 88 (5 South. Rep., 401); *Newman* v. *Dodson,* 61 Tex., 91; *Russell* v. *Bradley* (C. C.), 50 Fed. Rep., 515; *Cooper* v. *Johnson,* 81 Mo., 486; *Moseley* v. *Jamison,* 68 Miss., 337 (8 South. Rep., 744); *Heiligmann* v. *Rose,* 81 Tex., 222 (16 S. W., 931; 13 L. R. A., 274; 26 Am. St. Rep., 804); *Canfield* v. *C., R. I. & P. Ry. Co.,* 59 Mo. App., 365; Thompson on Trials, sec. 2073 *et seq.,* and numerous cases cited; *L. & N. R. R. Co.* v. *Ballard,* 88 Ky., 163 (10 S. W., 429; 2 L. R. A., 694); *Aldrich* v. *Palmer,* 24 Cal., 513.

*Affirmed.*