354 So.2d 239 (1977)
STANDARD LIFE INSURANCE COMPANY OF INDIANA
v.
Eugene VEAL.
No. 49430.
Supreme Court of Mississippi.
November 9, 1977.
Rehearing Denied February 8, 1978.
*240 Butler, Snow, O'Mara, Stevens & Cannada, Junior O'Mara, Jackson, for appellant.
Merrida P. Coxwell, Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
This appeal and cross appeal comes from the Circuit Court of the First Judicial District of Hinds County. Eugene Veal, plaintiff, sued Standard Life Insurance Company of Indiana, defendant, for breach of contract for failing to pay the face value of a decreasing term life insurance policy in the initial amount of $1,008. The jury awarded plaintiff damages in the amount of $26,008, $1,008 actual damages and $25,000 punitive damages.
Defendant assigns the following errors on direct appeal:
1. The lower court erred in refusing to direct the jury to return a verdict in favor of appellant.
2. The lower court erred in refusing to instruct the jury they could not return a verdict against appellant for punitive damages.

*241 3. The lower court erred in instructing the jury with regard to construction of the insurance policy.
4. The lower court erred in overruling appellant's motion for new trial, in particular, that the amount of the verdict of the jury was excessive.
Plaintiff cross appealed and assigned as error the action of the trial court in setting aside a default judgment rendered in his favor in the amount of $51,008.
On July 23, 1973 plaintiff executed a brokerage contract with Ades Finance Company, a licensed broker under the small loan privilege act, to negotiate a loan for him. The face amount of the loan was $1,008 from which various charges were deducted as set forth in the following summary:

Face Amount of Loan $1,008.00
Less Deductions:
 Discount to Ades Finance
 Co. $ 79.12
 Service charge to lender 342.83
 Accident and health
 insurance premium 38.30
 Credit Life Ins. premium 30.24 490.49
 ____________________
Balance disbursed to Veal $ 517.51

The indebtedness was to be repaid in thirty-six monthly installments of $28 each with the first installment due on August 23, 1973. When the brokerage contract was entered into, Ades Finance Company, acting as agent for defendant, issued a decreasing term life insurance policy on the lives of plaintiff and his wife, Jessie Lee Veal. The policy also insured plaintiff against physical disability.
Defendant entered into a contract on February 21, 1973 with Moses Ades, doing business as Ades Finance Company whereby defendant agreed to insure obligors upon payment of the premium specified therein. The contract contained the following provisions:
Each obligor of the Creditor Policyholder (except if either the principal obligor or spouse is past age 65, neither is eligible) in the following classes of indebtedness shall be eligible for insurance hereunder:
.....
`Insured obligor' as used herein means the principal or first signatory on a contract of indebtedness and his or her spouse by marriage not dissolved by a divorce or legal separation at the inception of the debt. In the case of a single person, `insured obligor' means the signatory on a contract of indebtedness.
If any premium is received for insurance on an obligor who is not eligible under the terms of this policy, the liability of the Company shall be limited to a refund of the premium to the Creditor Policyholder and any insurance charge to the obligor for such insurance will be paid by the Creditor Policyholder to the obligor or credited to his account.
Insurance shall become effective on the lives of all eligible obligors of the Creditor Policyholder whose names are reported to the Company under the terms and conditions hereinafter provided. The insurance with respect to any insured obligor shall automatically terminate (1) by renewal, refinancing, or repossession of the collateral for the indebtedness in connection with which the insurance was issued; (2) upon discharge of such indebtedness by payments by or on behalf of the obligor to the Creditor Policyholder; (3) by the indebtedness or any portion thereof being charged or required to be charged off by the laws applicable to the Creditor Policyholder; (4) by the expiration of the term of said indebtedness.
This is joint life insurance coverage and will pay only one death benefit. If a death benefit is paid as a result of the death of the insured obligor or the spouse no insurance will thereafter be in effect as to such obligor. Should the death of the insured obligor and the spouse occur simultaneously, one death benefit will be paid for the insured obligor only.
Each obligor insured hereunder shall be insured concurrently with the effective date of the indebtedness in connection with which the insurance is granted, and during the term of the indebtedness shall be insured for the amount necessary at *242 any time to discharge the indebtedness, unless the initial indebtedness exceeds $10,000.00.
.....
Individual certificates will be furnished by the Company to the Creditor Policyholder and the Creditor Policyholder shall deliver with each obligation a certificate describing the coverage. If the certificate is not delivered upon the inception of indebtedness, the Creditor Policyholder shall furnish a notice of proposed insurance and the certificate shall be delivered within thirty days of the inception of the indebtedness.
As authorized by the contract, Ades issued a certificate of insurance to plaintiff upon the inception of the indebtedness which contained the following provisions:

 CERTIFICATE OF INSURANCE
 NO. 218989J
Insured Obligor Mr. Eugene Veal Age 49 Social Security No. XXX-XX-XXXX
Spouse (Life Insurance Only) Jessie Lee Age 48 Social Security No.
XXX-XX-XXXX
CREDITOR POLICYHOLDER Ades Finance Company
--------------------------------------------------------------------------
 Insurance Charge
Code Term Coverage To Insured No. of Months
 ----------------------------------------------------------------
 Effective Initial Amount of Life
 Date Life Ins.
 7/23/73 $1008.00 $30.24 36
--------------------------------------------------------------------------
Acct. No Expiration Monthly Indemnity Disability
 Date
2157 8/23/76 $ 28.00 $38.30 36
==========================================================================
Maximum Waiting Elimination Max.Amount of Max.Monthly
 Age Period Period Insurance Indemnity
65 Years ____ Days ____ Days $10,000.00 $200.00
--------------------------------------------------------------------------
THIS IS TO CERTIFY that the Insured Obligor and the spouse (if any) named
above, are insured JOINTLY against the hazard of death and that the
Insured Obligor is insured SINGLY against the hazard of total disability
under the terms and conditions of a Creditors Group Joint Life Policy with
certain Single Total Disability Benefits, issued to the Creditor
Policyholder by
 STANDARD LIFE INSURANCE COMPANY OF INDIANA
 300 E.Fall Creek Boulevard, Indianapolis,
 Indiana 46205
JOINT LIFE INSURANCE (Insured Obligor and Spouse): This is JOINT life
insurance coverage and will pay only ONE death benefit. If a death benefit
is paid as a result of the death of the Insured Obligor or the spouse, no
insurance will thereafter be in effect under this Certificate. If the death
of the Insured Obligor and the spouse occur simultaneously, ONE death
benefit will be paid for the Insured Obligor only.
AMOUNT OF LIFE INSURANCE: The initial amount of insurance shall be equal to
the initial indebtedness or the maximum amount of insurance stated above,
whichever is less. Thereafter during the term of the indebtedness, the
amount of insurance in force on the Insured Obligor or the spouse will be
equal to the balance due on the unpaid indebtedness; provided, however,
that if the initial indebtedness is greater than the initial amount of
insurance, the insurance in force will be that proportion of the unpaid
indebtedness which the initial amount of insurance bore to the initial
indebtedness. In no event, however, shall the total amount of insurance at
any time under this and like certificates issued to the Obligor by the
Company exceed in the aggregate the maximum amount of insurance stated
above.

Jessie Lee Veal died August 5, 1973 and proof of death was filed with defendant in accordance with the terms of the policy. On October 15, 1973 defendant wrote Ades that the death claim of Jessie Lee Veal would not be honored. Defendant stated in its letter the following:

*243 We regret we cannot honor this claim since Jessie's name did not appear on the debt instrument; so she had no insurable interest, and there was no debtor-creditor relationship.
On October 24, 1973 plaintiff's attorney wrote defendant requesting them to review the claim and forward their check without further legal proceedings. No reply was made to this letter so on November 30, 1973 plaintiff's attorney wrote defendant stating that it would be necessary to file suit unless they received a check in payment of the claim. Defendant replied on December 4, 1973 that they did not find the letter dated October 24. Defendant enclosed a copy of their letter to Ades dated October 15, 1973 and stated that the letter to Ades, "explains the position our company has decided upon relative to the policy that was issued." Plaintiff then filed his declaration on March 20, 1974.
After suit was filed defendant's House Counsel received a copy of the declaration and reached the conclusion that defendant was not liable, but after considering the claim from an economic standpoint, recommended that the company pay $1,008, the face amount of the policy. The offer was made to one of the attorneys representing the plaintiff who stated that he would talk with plaintiff and get back in touch with defendant's House Counsel. Plaintiff's attorney did not call defendant's House Counsel so in about a week the offer was repeated to plaintiff's attorney who informed the House Counsel that he was not interested in any settlement. Plaintiff testified that he was never told that defendant had offered to pay the $1,008.

I.
Defendant argues, in support of its first assignment of error, that it was entitled to a directed verdict on the question of liability under the insurance policy for two reasons: (1) plaintiff did not have the right to bring the action because he was not named as a beneficiary, and (2) no premium was paid for coverage on the life of plaintiff's wife.
Defendant's contention that plaintiff is precluded from recovering on the policy because he is not a beneficiary does not dispute the legitimacy of the claim, but simply raises the question of the standing of the plaintiff to maintain the action. Defendant's argument is based on the following provisions of the policy:
Beneficiary: Benefits payable under this certificate shall be paid to the Creditor Policyholder, or at its direction to any subsidiary, affiliate, or other creditor to whom the Creditor Policyholder may have transferred title to the indebtedness, as irrevocable Credit Beneficiary, as its interest may appear. Such amount shall be applied toward the discharge of the indebtedness of such Insured Obligor and payment by the Company shall completely discharge the Company's liability with respect to the amount so paid. Any balance remaining after payment of the Insured Obligor's indebtedness to the Creditor Beneficiary shall be paid to the estate of the Insured Obligor as second beneficiary, or in the case of disability benefits, to the Insured Obligor.
Defendant contends that the insurance was issued for the purpose of paying the loan to Ades and that Ades (the creditor policyholder) is the primary beneficiary; and, therefore plaintiff had no standing to bring the lawsuit. Jessie Lee Veal, plaintiff's wife, worked and helped support the family. By insuring his wife, Veal was protecting himself against the possibility of his wife's death which would result in decreasing the family income.
We have no case directly in point on this question, but the principle announced in Stuyvesant Ins. Co. v. Motor Sales Co., 135 Miss. 585, 99 So. 575 (1924) is applicable to the facts of this case. Motor Sales Co. sued appellant, Stuyvesant Insurance Co. for a loss suffered by appellee in the burning of an automobile covered by the policy. Motor Sales recovered a judgment and appellant argued on appeal that there was no right of action in appellee, but that if one existed, it was in the Capital National Bank, to whom *244 there was a mortgage loss payable clause in the policy of insurance. The Court stated:
In this case appellee had a beneficial interest in the proceeds of the insurance policy. The appellee was indebted to the Capital National Bank in an amount exceeding the loss under the policy; therefore any amount collected from appellant, on account of the loss, was due to go to said bank as a credit on appellee's said indebtedness. It is true the Bank had the legal title to the cause of action when suit was begun by appellee. Nevertheless appellee had a beneficial interest therein. That beneficial interest was the right to have the proceeds of the policy go to the bank on appellee's indebtedness. This is a case, therefore, where the holder of the legal title to the cause of action did not sue, the suit being brought alone by the appellee, the beneficial owner of the proceeds of the policy.
Clearly, under section 775, Code of 1906 (section 558, Hemingway's Code), appellee would have been entitled to amend by adding or substituting, as plaintiff, the Capital National Bank. Kelly v. Casualty Co., 87 Miss. 438, 40 So. 1; McCue v. Massey, 90 Miss. 124, 43 So. 2; Jones v. Clemmer, 98 Miss. 508, 54 So. 4. (135 Miss. at 593, 99 So. at 576).
In our case plaintiff executed a contract with Ades to borrow money, and following the death of his wife and rejection of the claim for the wife's death by defendant, Ades demanded payment of the debt from plaintiff. Ades did not sue defendant, which it had the right to do, thereby leaving plaintiff liable for the debt. Although any amount collected from defendant, on account of the death of Mrs. Veal, was due to be paid Ades as a credit on plaintiff's debt, and although Ades was the primary beneficiary named in the policy; nevertheless, plaintiff had a beneficial interest therein. Like the plaintiff in Stuyvesant Insurance Co., supra, the beneficial interest was the right to have the proceeds of the policy applied on his debt. If plaintiff was not permitted to maintain the action and Ades refused, or did not file suit, plaintiff would have no remedy to collect the proceeds from the insurance policy and apply it on his debt, but would be required to pay the debt. We hold that plaintiff's beneficial interest in the proceeds of the insurance policy entitled him to maintain his action.
In Williams v. Home Insurance Co., 168 Miss. 443, 151 So. 728 (1934) Williams, the appellant, brought an action against Home Insurance Co., appellee, for his interest in the loss of a truck which burned. Appellee issued a policy of insurance containing a loss payable clause in favor of Universal Credit Company, the mortgagee. The policy provided that in case of fire the loss should be adjusted with appellant, but was to be paid, subject to all the conditions of the policy, only to Universal Credit Company "for account of all interests." Appellant alleged that appellee had settled with Universal Credit Company but had not settled for his interest in the loss of the truck. The trial court sustained a demurrer to the declaration and this Court reversed and stated:
Concede that under the policy the legal title to the entire proceeds of the policy was in the Universal Credit Company for the use of itself and appellant, and for that reason appellant should have brought the suit in the name of the Universal Credit Company for his use; this question could not be raised by demurrer, it had to be raised by plea. If required so to do, the failure of appellant to sue in the name of the Universal Credit Company for his own use was a mere nonjoinder. Section 514, Code of 1930; McInnis Lumber Co. v. Rather, 111 Miss. 55, 71 So. 264. (168 Miss. at 448, 449, 151 So. at 730).
The rule announced in these two cases, which permitted suit by a plaintiff who had a beneficial interest in the proceeds of an insurance policy, should not be limited to the mortgagor-mortgagee relationship but should be extended to the debtor-creditor relationship involved in this case. Defendant knew that it was insuring payment of loans of debtors of Ades if these members died or were totally and permanently disabled. Ades was interested *245 in the loan being paid, and the plaintiff as a debtor, was interested in his loan being paid in the event of his death or disability, or in the event of the death of his wife. Certainly plaintiff could have joined in a suit against the defendant because the contract of insurance was actually for the mutual benefit of Ades and the plaintiff, and the benefit to plaintiff was more than an incidental benefit.
If defendant had filed his objection of non-joinder as required by section 11-7-21 Mississippi Code Annotated (1972) the trial court could have, before trial of the issue, permitted the declaration to be amended to sue in the name of Ades for the use of the plaintiff. The failure of Ades to file suit on the policy was, as held in Williams v. Home Insurance Company, supra, a mere non-joinder.
Section 11-7-21 was not repealed when section 11-7-59 Mississippi Code Annotated (1972) was adopted as Chapter 230 Mississippi General Laws of 1948. The section is still viable and we held in Wiener v. Pierce, 253 Miss. 728, 178 So.2d 869 (1965), with reference to section 11-7-23 Mississippi Code Annotated (1972) which deals with non-joinder or misjoinder of defendants, that:
The law is that in an action on a contract either in circuit or chancery court the nonjoinder or misjoinder of defendants cannot be raised by a special demurrer but must be raised by a plea as required by the statute. (253 Miss. at 733, 178 So.2d at 871).
The same rule applies to the statute dealing with non-joinder or misjoinder of parties plaintiff. (Section 11-7-21).
Defendant next contends it was entitled to a directed verdict because the estate of his deceased wife was the second beneficiary under the policy. The insurance policy named Ades as the creditor policyholder and provided for payment to the creditor policyholder to be applied by the creditor policyholder toward the discharge of the debt of plaintiff. The debt was incurred and the policy issued on July 23, 1973 and plaintiff's wife died on August 5, 1973. The initial amount of insurance was $1,008, the note was for $1,008, and no payment was due nor had been made on the date of the wife's death. The policy provided that the initial amount of insurance shall be equal to the initial indebtedness and thereafter during the term of the indebtedness the amount of insurance in force on the insured obligor or the spouse will be equal to the balance due on the unpaid indebtedness.
Plaintiff admits in its brief, under the factual situation involved in this case, the estate of plaintiff's deceased wife did not become a second beneficiary because no payment had been made on the loan and the face amount of the policy equalled the debt. Under no conceivable set of facts could the estate of plaintiff's deceased wife become a second beneficiary because the policy provides that the amount of insurance will never exceed the amount of the debt. Furthermore, the termination clause[1] of the policy contains additional provisions which further limit the possibility of defendant ever becoming liable to the estate of plaintiff's deceased wife.

II.
Defendant next contends that plaintiff is not entitled to recover because no premium was charged for insurance on the life of plaintiff's wife. The contract between Ades Finance Company and defendant contains the following provisions:
The premium for this policy shall be computed at the following rates per annum for each $100 of initial insurance and is to be paid in full to the Home *246 Office of the Company on or before the 10th day of the month following the month in which the premium becomes due:

 Joint Coverage $1.68
 Single Coverage $1.00

The Company may, on or after the anniversary date of the policy, make retroactive premium adjustments, based on experience of the preceding year, but no such retroactive adjustment shall result in any increase in premium.
.....
A grace period of thirty-one days will be allowed for the payment of any monthly premium due hereunder except the first. If any monthly premium is not paid within such grace period, this Policy and all insurances on the lives of insured obligors for which premiums have not been paid shall terminate at the end of such grace period except that such termination shall occur at an earlier date, not prior to the end of the period for which premiums have been paid, should the Creditor Policyholder give written notice of cancellation.
If the policy terminates during or at the end of the grace period, the Creditor Policyholder shall be liable to the Company for the payment of a pro rata premium for the time the policy was in force during such grace period.
On or before the 10th of each month the Creditor Policyholder shall furnish the Company on forms provided by the Company such data as may be required, respecting the obligors insured hereunder and the terms of their respective obligations and shall accompany such data with the monthly premium due under the terms hereof. The Company shall have the right to examine, at any reasonable time, such records of the Creditor Policyholder as have a bearing on this insurance.
Defendant states that the premium was computed on the single coverage rate of $1.00 for each $100 of initial insurance instead of the joint coverage of $1.68 for each $100 of initial insurance and states that the single coverage rate of $30.24 shown in the certificate of insurance issued to plaintiff reflects that the single coverage rate was charged. According to our computation the joint coverage rate would amount to $50.80 for the three years insurance. This argument of defendant is unsound for two reasons. First, the error in the premium was an error of the agent of defendant and an insured may not be prejudiced by the mistake of an insurance agent if the agent made a mistake in computing the premium. In case of a mistake in the premium being charged, defendant would be entitled to have the contract reformed to reflect the proper premium. In Johnson v. Consolidated American Life Insurance Company, 244 So.2d 400 (Miss. 1971) we held that insurance policies may be reformed as other contracts in a proper case. We permitted reformation of a contract when the figure of $5,000 was mistakenly written instead of $19.20 in a payment option.
The second reason is that a premium was charged which was sufficient to keep the insurance in force until Mrs. Veal's death. The certificate of insurance was issued by Ades to plaintiff on July 23, 1973 and his wife died on August 5, following. The contract between Ades and the defendant provided that:
Insurance shall become effective on the lives of all eligible obligors of the Creditor Policyholder whose names are reported to the Company under the terms and conditions hereinafter provided.
.....
Each obligor insured hereunder shall be insured concurrently with the effective date of the indebtedness in connection with which the insurance is granted, and during the term of the indebtedness shall be insured for the amount necessary at any time to discharge the indebtedness, unless the initial indebtedness exceeds $10,000.00.
The policy requires the creditor policyholder to furnish the company on or before the 10th of each month such data as may be required respecting the obligor's insured *247 and the terms of their respective obligations and to accompany such data with the monthly premium due under the terms. After the certificate was issued by Ades Finance Company on July 23, 1973 it was not required to forward the monthly premium due until the 10th day of August, 1973. Ades had charged plaintiff with a premium in the amount of $30.24 which was sufficient to provide joint coverage on plaintiff and his wife for more than eighteen months. The policy does not require that the full amount of the premium for three years be paid in advance but provides for monthly premiums. We therefore conclude that the plaintiff had been charged a premium sufficient to keep the policy in effect for at least eighteen months past the date on which his wife died.

III.
In its second assignment of error defendant contends that this is not a proper case for assessment of punitive damages against it. We recognize that punitive damages are assessed as an example and warning to others and should be allowed only with caution and within narrow limits. In Snowden v. Osborne, 269 So.2d 858 (Miss. 1972), the reason for allowing punitive damages was stated as follows:
Exemplary or punitive damages are those, of course, which are in addition to the actual or compensatory settlement. They are granted in the nature of punishment for the wrongdoing of the defendant and as an example so that others may be deterred from the commission of similar offenses thereby in theory protecting the public. Yazoo v. Mississippi Valley R.R. Co. v. May, 104 Miss. 422, 61 So. 449 (1913); Yazoo & Mississippi Valley R.R. Co. v. Hardie, 100 Miss. 132, 55 So. 42 (1911). See also U.S. Fidelity & Guaranty Co. v. State, 254 Miss. 812, 182 So.2d 919 (1966); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); West Bros., Inc. v. Barefield, 239 Miss. 530, 124 So.2d 474 (1960); as well as the discussion in 15 Am.Jur., Damages, § 265, p. 698 (1938).
The basis in awarding such damages to the injured party is that of rewarding an individual for public service in bringing the wrongdoer to account. Fowler Butane Gas Co. v. Varner, supra; Neal v. Newburger Co., 154 Miss. 691, 123 So. 861 (1929); and Hines v. Imperial Naval Stores Co., 101 Miss. 802, 58 So. 650 (1911). (269 So.2d at 860).
In Seals v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970) the Court did not allow punitive damages under the facts in that case, but stated:
Punitive damages may be recovered for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong. (236 So.2d at 392).
Further in Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962) the Court held:
In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. (244 Miss. at 150, 151; 141 So.2d at 233).
With reference to punitive damages in suits for breach of contract we stated in Progressive Casualty Insurance Company v. Keys, 317 So.2d 396 (Miss. 1975) the following:
(b) Punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. D.L. Fair Lumber Company v. Weems, 196 Miss. 201, 16 So.2d 770 (1944); American Ry. Express Co. v. Bailey, 142 Miss. 622, 107 So. 761 (1926); Hood v. Moffett, 109 Miss. 757, 69 So. 644 (1915). (317 So.2d at 398).
We come now to the query; Does the evidence support an award for punitive damages?
Defendant originally denied payment on the ground that "Jessie's name did not appear *248 on the debt instrument; so she had no insurable interest, there was no debtor-creditor relationship." This position is contrary to the express definition of "insured obligor." The contract between Ades Finance Company and the defendant defines "insured obligor" in the following language:
`Insured obligor' as used herein means the principal or first signatory on a contract of indebtedness and his or her spouse by marriage ...
There is no requirement that the spouse of an insured obligor sign the note; therefore, the original reason assigned by defendant for failing to pay the claim for the death of plaintiff's wife is without any foundation whatever, and was not argued on appeal. Likewise, the other grounds raised at the trial and argued were without merit as previously discussed in this opinion.
Defendant failed to honor the legitimate claim filed following the death of plaintiff's wife and there was no reason whatever to justify its action. Following its initial rejection of the claim plaintiff employed an attorney and defendant again rejected the claim for the original reason stated. It only offered to pay the face amount of the policy after plaintiff had filed his suit.
This case demonstrates the necessity of awarding punitive damages when an insurance company refuses to pay a legitimate claim, and bases its refusal to honor the claim on a reason clearly contrary to the express provisions of its own policy. If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a claimant to litigate with no fear that claimant's maximum recovery could exceed the policy limits plus interest, would enable the insurer to pressure an insured to a point of desperation enabling the insurer to force an inadequate settlement or avoid payment entirely. We are of the opinion that the refusal to pay the legitimate claim in this case was an intentional wrong and constituted an independent tort as contemplated in Progressive Casualty Insurance Company v. Keys, supra.
Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie, but in this case the defendant had no reason to contest the claim filed with it. We therefore hold that punitive damages were allowable.

IV.
In its third assignment of error defendant argues that the following instruction should not have been given:
You are instructed that if you believe from the evidence, if any, that Standard Life Insurance Company of Indiana supplied the forms used by Ades Finance Company and given to Eugene Veal by Ades Finance Company then this is to be considered as a contract of insurance between the parties.
If the term `Obligor and Spouse' are ambiguous or difficult to understand then there is a legal principal that a contract of insurance is to be construed strictly in favor of the insured, and most strongly against the insuror; that is to say in favor of Eugene Veal and against Standard Life Insurance Company of Indiana.
This instruction is error because difficulty of understanding a contract of insurance is not a reason to construe a policy against the insurance company. However, this does not constitute reversible error because this instruction deals with the liability of the defendant on the insurance policy. In our view of the case the plaintiff was entitled to a peremptory instruction directing the jury to find for him for the face amount of the policy; therefore, the instruction is harmless error.

V.
In its fourth assignment of error defendant argues that the trial court erred in overruling its motion for a new trial particularly with reference to the amount of the verdict of the jury. Defendant argues *249 that the amount awarded for punitive damages is excessive. In Snowden v. Osborne, 269 So.2d 858 (Miss. 1972) we declined to enter a remittitur in a case where punitive damages in the amount of $30,000 were awarded and stated:
We are of the opinion that the ends of justice will be better served by reversing that portion of the judgment awarding punitive damages and remanding the cause to the Circuit Court of Jackson County for a hearing upon the question of punitive damages only. (269 So.2d at 861).
We also stated in Snowden:
We are, in fact, on review, left in a complete quandary by the vacuum in the record as to the appropriateness of the judgment by way of punitive damages other than to say that it seems, on its face, to be disproportionate to the physical injuries inflicted. It is an insufficient basis for establishing a remittitur and particularly so since we stated in Yazoo & Mississippi Valley Railroad Co. v. Williams, 87 Miss. 344, 39 So. 489 (1905), the following:
... it is the long settled and uniformly adhered to rule in our jurisprudence that the amount of such punitory or exemplary damages is solely within the discretion of the jury, and, no matter what the sum of their finding might be, interference therewith, unless for exceptional causes, is discouraged ... the reason being that, as the jury are the sole judges of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative... . (87 Miss. at 355-356, 39 So. at 491).
To the same effect see Yazoo & Mississippi Valley Railroad Co. v. May, 104 Miss. 422, 61 So. 449 (1913). (269 So.2d at 861).
In this case we are of the opinion that the award is not excessive. Defendant had no reason to deny the claim and has assets of in excess of $85,000,000. An award for punitive damages, if it is to accomplish its purpose, must be of sufficient size to deter the defendant from arbitrarily refusing to pay legitimate claims.

VI.
Plaintiff filed a cross appeal and urges this Court to reinstate a default judgment rendered by the trial judge on a writ of inquiry in the amount of $51,008; $1,008 actual damages and $50,000 punitive damages. Judgment on the writ of inquiry was entered on September 8, 1975 and on September 19, 1975 defendant filed a motion to set aside the default judgment and judgment on writ of inquiry. After a hearing on the motion the judge set aside the default judgment and in this we find no error.
AFFIRMED ON DIRECT AND CROSS APPEALS.
PATTERSON, C.J., and WALKER and LEE, JJ., concur.
SMITH and INZER, P. JJ., and ROBERTSON and BROOM, JJ., dissent.
BOWLING, J., took no part.
SMITH, Presiding Justice, dissenting:
This case involves a certificate of credit life insurance.
Appellee Veal obtained a loan from Ades Finance Company in the sum of $1,008. As additional security for the loan, appellant, Standard Life Insurance Company, issued its certificate of credit life upon the lives of Veal and Veal's wife, loss payable to Ades for the amount of the unpaid debt. Veal and his wife were named jointly as insureds although Mrs. Veal was not a signatory on the note evidencing Veal's debt to Ades. The certificate reflected the following:

*250
 Insured Obligor Mr. Eugene Veal
 Age 49
 Social Security No. XXX-XX-XXXX
 Spouse (Life Insurance Only) Jessie Lee
 Age 48
 Social Security No. XXX-XX-XXXX
 CREDITOR POLICYHOLDER Ades Finance Company
------------------------------------------------------------------
 Code Term Coverage Insurance Charge No. of
 To Insured Months
 ---------------------------------------------------
 Effective Initial Amount Life
 Date of Life Ins.
 7/23/73 $1008.00 $30.24 36
------------------------------------------------------------------

The policy provided:
AMOUNT OF LIFE INSURANCE: The initial amount of insurance shall be equal to the initial indebtedness or the maximum amount of insurance stated above, whichever is less. Thereafter during the term of the indebtedness, the amount of insurance in force on the Insured Obligor or the spouse will be equal to the balance due on the unpaid indebtedness; provided, however, that if the initial indebtedness is greater than the initial amount of insurance, the insurance in force will be that proportion of the unpaid indebtedness which the initial amount of insurance bore to the initial indebtedness. In no event, however, shall the total amount of insurance at any time under this and like certificates issued to the Obligor by the Company exceed in the aggregate the maximum amount of insurance stated above.

* * * * * *
Beneficiary: Benefits payable under this certificate shall be paid to the Creditor Policyholder, or at its direction to any subsidiary, affiliate, or other creditor to whom the Creditor Policyholder may have transferred title to the indebtedness, as irrevocable Creditor Beneficiary, as its interest may appear. Such amount shall be applied toward the discharge of the indebtedness of such Insured Obligor and payment by the Company shall completely discharge the Company's liability with respect to the amount so paid. Any balance remaining after payment of the Insured Obligor's indebtedness to the Creditor Beneficiary shall be paid to the estate of the Insured Obligor as second beneficiary, or in the case of disability benefits, to the Insured Obligor.
* * * * * *
Termination: The insurance under this certificate shall be terminated (1) by renewal, refinancing, or repossession of the collateral for the indebtedness in connection with which the insurance was issued, (2) upon discharge of such indebtedness by payments by or on behalf of the Obligor to the Creditor; (3) by the indebtedness or any portion thereof being charge off or required to be charged off by the laws applicable to the Creditor; (4) by the expiration of the term of said indebtedness.
* * * * * *
Mrs. Veal died shortly after the transaction with Ades was closed and the certificate issued. Veal paid nothing on the debt and Ades, testifying as a witness, so stated.
Following Mrs. Veal's death Ades wrote Standard Life requesting that it pay the amount due him by Veal under the terms of the certificate. Standard declined upon the stated ground that Mrs. Veal had not signed the loan instruments and was not a debtor to Ades. After considerable correspondence with attorneys employed by Veal, Standard's general counsel offered to pay the amount of $1,008 in settlement of the claim. This offer, made to Veal's counsel who promised to submit it and to advise Standard's counsel as to the result, was never communicated to Veal by his counsel. *251 Having received no response to the offer, after a time Standard again contacted Veal's counsel who, this time, rejected the offer out of hand. Again Veal was not informed of the offer and Standard was told by his counsel that they were "not interested" in the offer or in "any other offer."
The case came on for trial and was stubbornly contested by able and reputable counsel representing Standard. At the conclusion of the case, the trial court submitted the liability of Standard for the $1,008 to the jury, and also instructed the jury that it might return punitive damages against Standard. This resulted in a verdict for Veal in the sum of $1,008, and, in addition, an award of $25,000 as punitive damages.
It is difficult to see how this case can be distinguished in any material particular from any other case where suit is filed upon a contract and the person against whom the suit is brought defends and loses. Veal had no standing to sue under the clear terms of the insuring certificate. This right was the exclusive prerogative of Ades so long as the debt to Ades was outstanding and unpaid. It is true that Veal might have sought a mandatory injunction to compel payment of the debt by Standard to Ades under the terms of the certificate, but Ades had the exclusive right to recover the money in an action at law. In the situation which has now resulted in the present suit, Ades has not been paid and Veal is being allowed to collect money which belongs to Ades under the policy and which Veal undoubtedly owes.
There was, and will be, no "balance" remaining "after payment of the Insured Obligor's indebtedness to the Creditor Beneficiary" to be paid to Veal or anyone else. It is conceded in Veal's pleadings that this policy is a credit life insurance policy, and is, quite obviously, the type of policy which has come into common use in credit transactions. It is cheap, and protects both the lender and borrower with respect to the loan. Its low cost of only $1.68 for each $100 of initial insurance requires that the coverage afforded be strictly limited by the terms of the certificate. The decision in this case would increase the exposure of the insurer under this type of coverage (here about 26 times the amount of insurance afforded) to losses which cannot be estimated in advance and which are measured only by the emotional whim of a jury.
The wage earner, whose income stops with his death, by means of (presently) inexpensive credit life insurance may now borrow money which, without credit life coverage, he would not otherwise have been able to do. If a company writing a certificate insuring a thousand dollar loan is to be exposed to a judgment for $26,000.00 simply because it first rejected a claim, even if it turns out that it was mistaken in so doing, it may become difficult to obtain coverage and certainly will become substantially, and perhaps prohibitively more expensive. These things are of particular importance to people who work for wages.
In any event, the record in the case before us discloses that Standard was represented by competent and reputable local counsel throughout and it must be assumed they acted upon advice of counsel. This, in itself, should destroy the claim of intentional wrongdoing. In no event should the mere declination to pay a debt, however, clearly owed, be held to be a "distinct and separate tort" justifying the imposition of punitive damages. The rule in Mississippi is to the opposite effect and is well established by the case law of this state. Typical of these decisions are the following:
In Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So.2d 226 (1962) the Court held:
In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. (244 Miss. at 150, 151, 141 So.2d at 233).
In Progressive Casualty Insurance Company v. Keys, 317 So.2d 396 (Miss. 1975) the Court held:

*252 (b) Punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. D.L. Fair Lumber Company v. Weems, 196 Miss. 201, 16 So.2d 770 (1944); American Ry. Express Co. v. Bailey, 142 Miss. 622, 107 So. 761 (1926); Hood v. Moffett, 109 Miss. 757, 69 So. 644 (1915).
(317 So.2d at 398).
Here, Standard sought to settle the case by payment in full of the face amount of the certificate, and its efforts were at first ignored and then finally rejected with a statement by Veal's counsel that they were "not interested" in any settlement. And this without ever having submitted the offer to Veal. This is not a situation which casts Standard in the role of villain or that reflects that its actions were wanton or oppressive. Fraud is neither alleged nor proved.
Ades, if anyone, was entitled to recover under the security certificate given and accepted for the purpose. Ades Finance Company cannot be considered to have been a Babe in the Woods in a financial transaction of a type with which it dealt daily. The result in this case is that Veal has usurped Ades' right to the proceeds of the policy. Veal will be permitted to receive under the conclusions and views expressed in the controlling opinion, money that is admittedly owing to Ades, leaving Ades and Standard in an anomalous situation, to say the least, as to the amount owed Ades and unpaid by Veal. I cannot agree that this is a proper disposition of the case, since it avoids the fundamental purposes of the contract and misconstrues the clear terms of the certificate. It seems to me that Standard had a reasonable, arguable defense, and that, moreover, its repeated offers to settle the case shortly after receiving a copy of the declaration filed against it, destroyed any suggestion of intentional wrongdoing.
The controlling opinion would dismiss the issue raised by Standard, that Veal had no standing under the contract to bring the suit, by citing the statutory requirement as to the manner of raising a question of nonjoinder of parties. It seems to me, however, that in an action at law for money allegedly due on a contract, exhibited with the declaration, under the terms of which the plaintiff clearly had no standing to recover, was a question which went beyond a mere question of nonjoinder and was a matter apparent upon the face of the declaration and its exhibited contract, and was a defect so fundamental and fatal to plaintiff's right that it might be attacked in any manner, even by motion for a directed verdict at the conclusion of the case when plaintiff's right to recover under the contract sued on not only had not been established but has been negated by specified proof put on by him that his creditor, not he, was entitled to sue.
Section 24 of the Mississippi Constitution 1890 requires that "all courts shall be open."
Article 3, section 25, Mississippi Constitution 1890, provides:
No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.
This means that every person against whom a suit is brought is entitled to defend it without exposing himself to punishment for so doing in the event he does not prevail.
The present case was sternly defended by competent reputable counsel and a number of defenses were interposed against Veal's right to recover under the terms of the certificate. The case involved interpretation of an insuring certificate affording Ades security for a small loan made to Veal. Standard's obligation was contractual. It was limited in express terms to paying to Ades the balance of the debt which remained unpaid at the time of the loss. There was nothing in the certificate that can be construed as having obligated Standard to pay anything to Veal. I do not believe that this Court can say that the case *253 was not defended in good faith or that the defendant was not acting with the advice of counsel. Nor can the defense offered at the trial be characterized as having been so groundless as to have been no more than a mere sham. Certainly the objection that Veal was not entitled to recover the money that belonged to Ades was well taken. The trial court properly rejected Veal's request for a peremptory instruction directing the jury to find in his favor, and granted numerous instructions for each party dealing with issues in the case. Moreover, much of the delay dwelt upon in the controlling opinion as having constituted wrongdoing by Standard was the result of an agonizing personal tragedy which occurred in the family of Standard's counsel. It was during this period that discussions took place between counsel as to the granting of additional time to plead. No definite agreement had been settled upon and Veal's counsel took a default judgment against Standard. The trial court, however, quite properly set this aside after a full hearing in which all of the facts were made known to him. I find myself unable to join in the conclusion that the delay, which was found by the trial judge to have been excusable to the extent that he set aside the default judgment, can justly be considered a circumstance which supports an award of punitive damages. The Constitutional right of a litigant to defend a suit brought against him will be severely chilled, to say the least, if he is to be required to expose himself to the prospect that in the event he and his counsel should prove to be mistaken in their position and he loses, he will be assessed with punitive damages. This has never been the law in Mississippi and should never be.
If the premise should be granted that Standard was mistaken and that there was a breach of contract, there is nothing to indicate that it was "attended by intentional wrong, insult, abuse or such gross negligence as to constitute an independent tort."
INZER, P.J., and ROBERTSON and BROOM, JJ., join in this dissent.
NOTES
[1] Termination: The insurance under this certificate shall be terminated (1) by renewal, refinancing, or repossession of the collateral for the indebtedness in connection with which the insurance was issued, (2) upon discharge of such indebtedness by payments by or on behalf of the Obligor to the Creditor; (3) by the indebtedness or any portion thereof being charged off or required to be charged off by the laws applicable to the Creditor; (4) by the expiration of the term of said indebtedness.