**John W. FISHEL, Administrator of the Estate of Stephen Timothy Fishel, Deceased, Plaintiff,**

v.

**AMERICAN SECURITY LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. S85–0960(NG).**

United States District Court, S.D. Mississippi, S.D.

Aug. 6, 1986.

Harry R. Allen, Mark W. Garriga, Gulfport, Miss., for plaintiff.

Alben N. Hopkins, Lisa P. Dodson, Gulfport, Miss., for defendant.

MEMORANDUM OPINION

GEX, District Judge.

This matter is before the Court on (1) the parties' cross motions for summary judgment on the question of coverage under the subject policies, and (2) Defendant's motion for partial summary judgment on the issue of punitive damages. For the reasons stated below, the Court is of the opinion that the cross motions should be denied and that Defendant's motion for partial summary judgment on the issue of punitive damages should be granted.

## I. STATEMENT OF FACTS

Prior to August, 1983, Stephen Timothy Fishel, Plaintiff's decedent, was employed as corporate legal counsel for Malone Properties, Inc. During this time, Fishel was covered under two policies of group insurance issued by Defendant to Malone Properties as policyholder. One policy (# G–L7733) provided $50,000.00 life insurance coverage and the other policy (# G–D7733) provided $50,000.00 accidental death benefits.

In August or September of 1983, Fishel left the full time employment of Malone Properties and opened an office where he engaged in the private practice of law until his death on December 2, 1983. Although Fishel represented a number of clients in private practice, he continued to represent and perform legal services for Malone Properties. After August of 1983, Malone Properties continued to remit a premium on behalf of Fishel until his death on December 2, 1983. Malone Properties never notified Defendant that it should terminate insurance coverage for Fishel after the change in his employment status.

On September 13, 1984, counsel for the Plaintiff—in response to efforts by Defendant to obtain documentation relative to Plaintiff's alleged coverage under the two aforementioned policies—advised Betty Stark, Defendant's Vice President of Policy Benefits, by letter [1] that "... Jim Fishel terminated his employment with Malone Properties several months before his death and you indicated that he would probably not be covered. Nevertheless, I look forward to receiving a copy of the policy together with your views as to coverage." Also as a follow-up to that same telephone conversation, Ms. Stark, by letter dated September 11, 1984, informed counsel for the Plaintiff as follows:

We appreciated your phone call last week explaining what Mr. Fishel's employment status with Malone Properties was on the date of his death.

The policy covers active full-time employees who work regularly at the principal place of business of the employer for a least 30 hours per week. A copy of the policy is enclosed for your perusal.

Based on the information you furnished us it doesn't appear Mr. Fishel was covered under the policy as his coverage terminated on the same date his employment with Malone Properties terminated. If you concur with this decision please let us know as Malone Properties will be entitled to a refund of premiums from the date of his termination.

No further action concerning Fishel's alleged coverage under the two group policies appears to have been taken until Plaintiff's counsel's letter dated March 4, 1985, addressed to Ms. Stark, advised her that "[a]fter having ... further investigated the circumstances of Mr. Fishel's coverage, we have decided that it is appropriate for the Estate to make a claim under Malone's group policy." Plaintiff's counsel explained his client's position, and indicated further that her correspondence dated September 11, 1984, contained only a copy of the schedule of insurance and not the "full copy of the Group Policy of Malone Properties." Plaintiff's formal claim for benefits was referred to counsel which, by letter dated July 9, 1985, explained to Plaintiff's counsel its position that no coverage on behalf of the decedent was in effect at the time of his death. This lawsuit followed.

## II. LAW AND ANALYSIS

The criteria to be employed by this Court in considering the merits of a motion for summary judgment are well established. A grant of summary judgment is appropriate only when it appears from the pleadings, depositions, admissions, answers to interrogatories and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985); *Rayborn v. Mississippi state Board of Dental Examiners*, 776 F.2d 530 (5th Cir.1985). The purpose of the motion for summary judgment is to

---

**1.** This letter confirmed a previous telephone conversation between the two.

test the intrinsic merits of the case and to determine prior to trial whether any factual controversy is presented. *Gossett v. DU–RA–KEL Corporation*, 569 F.2d 869 (5th Cir.1978). Summary judgment is permitted only when "the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts". *Prinzi v. Keydril Company*, 738 F.2d 707 (5th Cir.1984).

**A. Coverage under the Subject Policies**

Each of the policies here under consideration contains this pertinent language:

The term "employee" means a person directly employed in the regular business of and compensated for services by the Employer.

\* \* \* \* \* \*

The terms "actively at work" and "active work" mean the active expenditure of time and energy in the service of the Employer, except that an employee shal be deemed actively at work on each day of a regular paid vacation, or on a regular non-working day, on which he is not disabled provided he was actively at work on the last preceding regular working day.

\* \* \* \* \* \*

The classes of employees eligible for insurance hereunder (herein called eligible classes) shall be as follows: An active full-time employee is defined as an employee who works regularly at the principal place of business of the employer for at least 30 hours per week.

\* \* \* \* \* \*

Except as provided for in the "Extended Insurance" provision hereof, the insurance of an employee shall automatically terminate immediately upon the earliest of the following dates:
(a) the date of his termination of employement with the Employer or of his termination of membership within the eligible classes;

\* \* \* \* \* \*

An employee's termination of employment shall be deemed to have occurred upon cessation of his active work within the eligible classes, except that an employee who is on an approved leave of absence, temporarily laid off, employed on a part-time basis, or unable to work because of disability will nevertheless be considered as still employed within the eligible classes until the Policyholder, acting in accordance with rules precluding individual selection, terminates the employee's insurance by notifying the Insurance Company to that effect or by discontinuing premium payments for his insurance.

Plaintiff contends that although Fishel was not a full-time employee of Malone Properties at the time of his death, he was nevertheless covered under one of the exceptions to the above-quoted termination provision, namely that he continued to be "employed on a part-time basis." Defendant, on the other hand, submits that Fishel's individual insurance coverage terminated automatically on the day of his alleged termination of employment with Malone Properties.

██ The Court has reviewed the exhibits filed in this cause which bear upon the question of whether Fishel was "employed on a part-time basis" with Malone Properties at the time of his death—as contemplated by the terms of the policies—and determines that a genuine issue of material fact relative to same has been presented. Implicit in this determination is the Court's finding that the parties have, as a matter of law, contractually bound themselves to the above-quoted policy provision with regard to the issues of Fishel's employment status at the time of his death and its effect on any insurance coverage allegedly available to him. Given the myriad of facts testified to by the various deponents and affiants in support of and in opposition to the instant motion, resolution of whether Fishel was "employed on a part-time basis" with Malone Properties at the time of his death—under the terms of the policies—is properly a question of fact within the province of the jury.

### B. Punitive Damages

The basic standard controlling a Plaintiff's entitlement to punitive damages against an insurer was articulated in *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239 (Miss.1978), where the Mississippi Supreme Court quoted with approval language from a previous case that "punitive damages are not recoverable for breach of contract unless such breach is attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort." 354 So.2d at 247. *Veal* further provides that "if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie...." 354 So.2d at 248. In Mississippi, punitive damages are not favored and should be allowed only with caution and within narrow limits. *Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1304–05 (Miss.1982). In *State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242 (Miss. 1985), the Court reaffirmed the above-quoted principles contained in *Veal* and added:

> We are of the opinion the term "legitimate or arguable reason", although spawning much comment in our cases and in briefs and in arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous, or wanton conduct, or, if intentional, are accompanied by fraud or deceit. (citation omitted)

> This is only to say that not all denied claims constitute the gross, wanton or intentional conduct essential to the creation of an independent tort for which punitive damages will lie.

*Also see Butler v. Provident Life and Accident Ins. Co.,* 617 F.Supp. 724 (S.D. Miss.1985).

■ The Court is of the opinion that Defendant's denial of benefits to Plaintiff, whether it be deemed to have occurred in September, 1984, and/or in July, 1985, was buttressed by a legitimate and arguable reason articulated to Plaintiff based on the information Defendant had before it and the terms of the policy itself. In the former instance, Defendant's view that there was no coverage available arose from the representation made by Plaintiff's counsel to the effect that Fishel terminated his employment with Malone Properties in August or September, 1983. In the latter instance, Defendant's refusal to pay was made by its legal counsel with the benefit of additional information obtained in the interim. *See Gorman v. Southeastern Fidelity Insurance Co.,* 775 F.2d 655 (5th Cir.1985). The Court's determination that Plaintiff's claim for punitive damages should not lie is clearly warranted, moreover, by the absence of the kind of intentional, culpable conduct accompanying Defendant's refusal to pay benefits envisioned by Mississippi "bad faith" case law. *Veal, supra.*

### III. CONCLUSION

For the reasons stated above, the Court is of the opinion that the parties' cross motions for summary judgment should be denied and that Defendant's motion for partial summary judgment on the issue of punitive damages should be granted. An Order consistent with these findings shall be entered by the Court.