Doris Maxine NICHOLS and Louie Harold Nichols, Plaintiffs,

v.

SHELTER LIFE INSURANCE COMPANY, A Corporation, Defendant.

No. DC87–96–S–O.

United States District Court, N.D. Mississippi, Delta Division.

Sept. 9, 1988.

Gary P. Snyder, Bridgforth, Woods, Buntin & Snyder, Olive Branch, Miss., for plaintiffs.

Robert L. Moore, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, Tenn., for defendant.

## OPINION

SENTER, Chief Judge.

This suit involving allegations of wrongful denial of an insurance claim presents several questions for resolution. These questions arise in the context of a motion to dismiss for failure to state a claim and a motion for summary judgment, both of which were made by the defendant.

### I. Facts.

For the purpose of these motions, the defendant admits the factual allegations made in the plaintiffs' complaint and in the deposition of Maxine Nichols. Briefly summarized, these allegations are that Mr. and Mrs. Nichols applied for a major medical policy from Shelter Life on May 16, 1986. Randy Holland, the soliciting agent, visited with Mrs. Nichols on three occasions explaining the policy and filling out the application. During the course of these discussions, Mrs. Nichols informed Mr. Holland that she was seeking a replacement policy for the coverage she currently had in force. She also discussed with Mr. Holland the exclusion from coverage of preexisting conditions. She informed Holland that she had recently been hospitalized and a tumor had been surgically removed. According to Mrs. Nichols, Holland told her that if the tumor had been completely removed, the company would not consider that a preexisting condition. The application form was actually completed by Holland, who then gave the form to Mr. Nichols alone to sign although he had not been involved in filling out the form. Both Mr. and Mrs. Nichols were to be insured under the policy. The application did not reflect Mrs. Nichols' surgery, that she had had a cancerous tumor, or that this policy was meant to replace existing coverage, although each of these questions appeared on the form. The policy was issued around May 28, 1986. In August, 1986, Mrs. Nichols visited her physician for a routine, post-surgery checkup. This checkup revealed another tumor which also proved to be malignant. Since that time, the disease has spread. Mrs. Nichols has received extensive chemotherapy treatments, incurring medical bills in excess of $50,000.00. Shelter Life has steadfastly refused to pay any of these claims on the ground that the losses fell within the policy exclusion of losses due to a preexisting condition.

### II. Motion to Dismiss.

A. Mr. Nichols' Claim for Contract Damages.

The defendant argues that because Mr. Nichols has suffered no covered loss, the contractual duty to pay has not been triggered as to him. Mr. Nichols counters that under Mississippi law, he is jointly liable for the medical bills incurred by his wife. He further argues that his liability for these debts gives him a beneficial interest in the proceeds of the insurance policy similar to the interest recognized in *Standard Life Insurance Co. v. Veal*, 354 So.2d 239 (Miss.1978). In *Veal*, the court held that the plaintiff had standing to sue to recover the proceeds of a credit life policy issued on his wife's life with her creditors as beneficiaries on the theory that the plaintiff's liability for his wife's debts gave him a beneficial interest in the proceeds of the policy. *Veal* is distinguishable from the present case because in *Veal*, the plaintiff's wife was deceased. However, given Mr. Nichols' joint liability for his wife's debts, he is in much the same position as the plaintiff in *Veal*. Mr. Veal was a potential defendant in a suit by his wife's creditors who could choose to sue either him or the credit life insurer. Mr. Nichols is in the same position as a potential defendant in a suit by his wife's creditors.

The Mississippi Supreme Court has held that a plaintiff in that position has stated a claim against his wife's insurer for recovery under the contract. Consequently, this much of the defendant's motion to dismiss must be overruled.

### B. The Extracontractual Compensatory Damages Claims.

█ Both Mr. and Mrs. Nichols claim the right to recover for emotional distress caused by the defendant's allegedly tortious refusal to pay. The defendant contends that such damages are not recoverable under Mississippi law. The cases cited by the defendant do not support this proposition. *State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.1985), cited by the defendant as authority that jury instructions concerning extracontractual compensatory damages are not authorized by statute or case law, stands only for the proposition that such instructions are authorized in breach of contract actions only where the facts support a punitive damages award. *Id.* at 252–53. In a concurring opinion in another case in which five other justices joined, Justice Robertson opined that "economic losses incurred as a proximate result of the insurer's tortious conduct and emotional distress damages" are recoverable in the wrongful denial of insurance case under certain circumstances. *Blue Cross and Blue Shield v. Maas*, 516 So.2d 495, 498 (Miss.1987). This court has awarded such damages in *Eichenseer v. Reserve Life Insurance Co.*, 682 F.Supp. 1355 (N.D.Miss.1988). The court considers the question settled in the plaintiffs' favor. If they can prove at trial facts constituting "bad faith", these plaintiffs can recover for any emotional distress that they suffered as a result of the company's tortious acts.

### C. Mr. Nichols' Punitive Damages Claim.

The defendant also argues that Mr. Nichols is not entitled to recover punitive damages because these are not recoverable if no actual damages are allowed. The court's holding that Mr. Nichols has stated a claim for actual damages disposes of this argument.

### III. Summary Judgment.

█ The defendant also seeks summary judgment as to all claims. Shelter Life argues that it was justified in denying the plaintiffs' claims because they were based on losses which occurred as a result of a preexisting condition. Shelter Life further argues that even if Mr. Nichols did tell its agent about her preexisting condition, that is of no legal consequence to the contract which was entered into by the parties. The defendant is correct when it argues that the effect of statements made by the applicant to the agent is very different when the defense is misrepresentation than when it is preexisting condition. This court has recently dealt with just that distinction in *Pongetti v. First Continental Life and Accident Co.*, 688 F.Supp. 245 (N.D.Miss. 1988) (submitted for publication). An insurer can issue a policy with knowledge of a preexisting condition without being held to have waived the clause excluding coverage of losses which occur as a result of that preexisting condition. However, this analysis misses the essential issue of this case—whether a company can deny coverage of losses under the preexisting conditions clause when the company's agent induced the insured to apply for this policy and to give up her existing coverage by assuring her that the very condition which the company now claims preexisted the issuance of the policy would not be considered preexisting under the terms of the policy. The issue in this case is not what Mrs. Nichols told Randy Holland, but what Holland told Mr. Nichols. The question is not whether the preexisting condition clause has been waived, but whether the company is bound by the alleged statements of its agent as to the meaning of that clause and whether a particular condition would be considered preexisting. *See, e.g., Ford v. Lamar Life Insurance Co.*, 513 So.2d 880, 887–88 (Miss.1987). Additionally, the plaintiffs have stated a claim for fraud in this case. If the facts supporting this claim are proven at trial, the company would be liable for fraud committed by its agent if committed in the course and scope of his employment. The defendant

has not demonstrated that it is entitled to judgment as a matter of law on either of these points.

The motions to dismiss and for summary judgment submitted by the defendant are not well taken and should be denied.

An order in conformity with this opinion shall be issued on this date.

## ORDER DENYING DEFENDANT'S MOTION TO BIFURCATE

This action founded on allegations that the defendant wrongfully refused to pay legitimate insurance claims is before the court on the defendant's motion to bifurcate the contractual and punitive damages issues. The defendant asserts that evidence concerning the actions of its employees is irrelevant to the question of whether there was coverage under the policy and should not be presented until after the court has determined that there was no arguable basis for the refusal to pay.

██ The defendant has pointed out no particular evidence which it thinks would go to contract damages but not punitive damages—other than the value of the company. The actions and representations of its agent are clearly relevant to the plaintiff's fraud claim and may be relevant to an interpretation of the clause excluding losses due to preexisting conditions. The court is of the opinion that in the interest of fairness to both parties, prejudice to the defendant can best be avoided in this case by proceeding as follows:

(1) Hear all evidence relevant to the fraud and contract claims;

(2) Determine whether there was a legitimate reason for denying the claim;

(3) If the plaintiff is entitled to a directed verdict as to contract damages, allow the plaintiff to present his punitive damages evidence at the close of the defendant's case, with any rebuttal by defendant to follow;

(4) If the plaintiff is not entitled to a directed verdict, submit the contract and

fraud claims to the jury on special interrogatories asking the jury to determine whether punitive damages are appropriate.[1] If the jury determines that they are, then evidence relevant to the determination of the amount can be presented.

It is, therefore, ORDERED:

That the defendant's motion to bifurcate is denied.

---

1. A jury could award punitive damages for fraud even if the court determined that the company had an arguable reason for denying the claim.