United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 9, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

───────────

No. 06-60884
Summary Calendar

───────────

KAFAREN FAIRLEY,

Plaintiff-Appellant,

v.

DENISE CROWELL, DALE HARRIS AND CONTINENTAL CASUAL COMPANY,

Defendants-Appellees.

────────────────────────────

Appeal from the United States District Court for the
Southern District of Mississippi

────────────────────────────

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Kafaren Fairley challenges the district court's grant of summary judgment in favor of Denise Crowell, Dale Harris, and Continental Casualty Company ("Continental"). Fairley argues that Crowell, Harris, and Continental acted in bad faith in handling her workers compensation claim. We AFFIRM.

Fairley was working as an assembly line worker in Hattiesburg,

───────────

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Mississippi, when she suffered a compensable injury, ultimately diagnosed as bilateral carpal tunnel syndrome. She reported her condition to her employer, Manpower, Inc., ("Manpower") which subsequently reported the injury to Continental.

An adjuster for Continental contacted Fairley on December 2, 1999, and she began receiving temporary total disability ("TTD") benefits as of December 10, 1999, continuing until February 21, 2000, when she briefly returned to work at the American Red Cross. She left Red Cross in May, 2000, and began receiving TTD again as of June 5, 2000, for the period beginning May 26, 2000.

Continental sent Fairley to a doctor for an evaluation in May, 2000, and Fairley began seeing that doctor as her treating physician. He performed two surgeries on Fairley in May and June of 2000 to treat the carpal tunnel syndrome, and prepared a document on August 28, 2000, indicating that she could return to work. Manpower immediately found suitable employment for Fairley. Crowell, the adjuster handling Fairley's claim at that time, discontinued Fairley's TTD benefits as of September 5, 2000.

Shortly after Continental discontinued her TTD benefits, Fairley contacted Crowell to express displeasure at that decision, as well as the doctor's release to return to work. At that time, Fairley allegedly stated that if there was in fact a release from the doctor, she would "shoot him." Fairley subsequently expressed dissatisfaction with the doctor, and allegedly told Continental that he was never her choice of treating physician.

On November 9, 2000, Fairley filed her Petition to Controvert with the Mississippi Workers Compensation Committee and sought approval for a new treating physician. In October, 2001, the Administrative Judge ("AJ") ordered Continental to pay for an evaluation by a second doctor. The second doctor completed the evaluation in February, 2002, and concluded that Fairley could not work. He recommended further testing to determine the full extent of the injuries.

In July, 2003, the AJ issued her order, awarding Fairley permanent partial disability ("PPD") benefits and payment of reasonable and necessary future medical treatment. Following entry of the order, Fairley's attorney faxed his interpretation of the order to Harris, who had replaced Crowell as the adjuster. After crediting Continental for payments previously made, Harris calculated the final amount due to Fairley to be $22,035.93 and sent the check to Continental's counsel, who forwarded the check on to Fairley's counsel on November 19, 2003.

Continental had no further contact with Fairley until her counsel faxed a letter to Continental in January, 2004, complaining about the calculations and the credits Continental had taken. Fairley subsequently filed this suit for bad faith in Mississippi state court against the defendants. The case was removed to federal court. On July 21, 2004, the AJ issued an order clarifying the previous order, stating that Continental had the right to take credit for all prior payments, thus ratifying Harris' calculation.

3

Fairley did not appeal the AJ's second order. The district court granted Crowell's, Harris', and Continental's motions for summary judgment.

We review a grant of summary judgment *de novo*, using the same criteria employed by the district court. *Hanks v. Transcon. Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Because Mississippi law controls the disposition of the claims in this case, we apply the law in the same manner as a Mississippi court. *DiPascal v. New York Life Ins. Co.*, 749 F.2d 255, 260 (5th Cir. 1985).

Fairley seeks punitive damages, arguing that the defendants acted in bad faith. "Punitive damages are not recoverable for a breach of contract unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence as to consist of an independent tort." *Progressive Cas. Ins. Co. v. Keys*, 317 So.2d 396, 398 (Miss. 1975). Additionally, punitive damages cannot be recovered "if an insurance company has a legitimate or an arguable reason for failing to pay a claim." *Standard Life Ins. Co. v.*

4

*Veal*, 354 So.2d 239, 248 (Miss. 1977). Both elements — an intentional wrong, insult, abuse, or gross negligence *and* the absence of a legitimate or arguable reason for denial — must be satisfied. *See Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620 (Miss. 1988).

Continental paid Fairley benefits immediately upon notification of her injury and continued to do so until she was released to work by her treating doctor. It is true that Continental continued to deny reinstatement of benefits, even after the second doctor found Fairley could not work, until the AJ issued her order. The fact that Continental ultimately proved to be wrong in its assessment, however, does not create ground for punitive damages. The plaintiff must offer proof of an intentional wrong, insult, abuse, or gross negligence as to consist of an independent tort, and has failed to do so. Instead, she has merely shown that her disability status was contested.

In order for Crowell or Harris to be liable to Fairley, she must show that they personally acted grossly negligent, with malice, or with reckless disregard for her rights. *Bass v. California Life Ins. Co.*, 581 So.2d 1087, 1090 (Miss. 1991).

It is undisputed that Crowell was in constant contact with the nurse care manager for Continental while handling Fairley's claim so that she knew her medical status. When she received the doctor's release for Fairley to work in September, 2000, Crowell

continued benefits until she was advised that suitable employment had been arranged and offered to Fairley by Manpower. When Fairley refused the employment offer, her claim was disputed and there was no further obligation for Crowell to continue payments. There is no evidence that Crowell acted grossly negligent, and she is not liable.

Harris' involvement with Fairley's case was even more limited than Crowell. He properly calculated what was owed to Fairley after the AJ's order, and sent the checks to Continental's counsel to forward to Fairley. The AJ's second order, in July, 2004, showed his calculations to be correct. There is no evidence of negligence, and there can be no liability on Harris' part.

For the foregoing reasons, we AFFIRM the district court.