# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00133-SCT

*GULF GUARANTY LIFE INSURANCE COMPANY*

*v.*

*TAMMY DUETT, ADMINISTRATRIX OF BILLY DEWAYNE DUETT, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/92 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHANIE M. RIPPEE |
| | W. SCOTT WELCH, III |
| ATTORNEY FOR APPELLEE: | ROY O. PARKER, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND REMANDED IN PART - 3/7/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/28/96 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE CASE

¶1. This case involves the interpretation of a contract for credit life insurance between Billy Duett (Billy) and Gulf Guaranty Life Insurance Company (Gulf Guaranty). In October 1989, Billy Duett bought a new pick-up truck, which he financed through the Guaranty Bank and Trust Company of Belzoni, Mississippi. The loan was for $26,100.90, and was to be paid in three annual installments of $8,700.30. The installments were to become due beginning May 15, 1990, and the final payment was to be due May 15, 1992.

¶2. Billy purchased credit life insurance on the loan from Gulf Guaranty. He was issued a certificate of insurance and a schedule. The certificate clearly stated that its provisions were subject to the Group Credit Insurance Policy (the master policy), which was held by the bank.

¶3. The schedule issued to Duett indicated the following: (a) "amount of insurance"--"$26,100.90", (b) "type of loan"--"level", (c) "life premium"--"673.90", and (d) "Term of Ins.--Months"--"3 ANN PAY OF

$8,700.30 EA BEG. 5-15-90".

¶4. The certificate of insurance that accompanied the schedule reads as follows:

> **BENEFIT:** If this Certificate provides Level Life Insurance, the death benefit is level for the term of coverage and is equal to the Amount of Insurance shown in the Schedule. If this Certificate provides Reducing Life Insurance, the death benefit reduces throughout the term of coverage, beginning with the Amount of Insurance on the Date of Loan, decreasing uniformly each month by an amount equal to the "Amount of Insurance" divided by the number of months in "Term of Insurance--Months" both shown in the Schedule on the reverse side.

¶5. Billy Duett died July 24, 1991; at that time, he owed $8,700.30 on his truck loan. Gulf Guaranty paid $8,700.30 in death benefits. Billy's wife, Tammy Duett (Tammy), was named administratrix of Billy's estate. After unsuccessfully making demands on Gulf Guaranty, she brought suit in the Circuit Court of Humphreys County for $17,400.60--the difference between the $26,100.90 "amount of insurance" and the $8,700.30 amount of benefits already paid. She also sued for punitive damages. Both parties moved for summary judgment. The trial judge granted summary judgment in Tammy's favor and ordered Gulf Guaranty to pay $17,400.60 in additional death benefits and $15,000 in punitive damages, plus interest. On appeal, Gulf Guaranty raises the following issues:

**A. WHETHER TAMMY DUETT IS ENTITLED TO ANY ADDITIONAL DEATH BENEFITS UNDER THE TERMS OF THE GROUP POLICY AND THE INDIVIDUAL CERTIFICATE OF INSURANCE ISSUED TO BILLY DEWAYNE DUETT?**

**B. WHETHER THE "INCORRECT PREMIUM" PROVISION GOVERNS?**

**C. WHETHER GULF GUARANTY'S ACTIONS JUSTIFY AN AWARD OF PUNITIVE DAMAGES.**

## II. LEGAL ANALYSIS

¶6. The standard of review when a trial court issues a summary judgment is as follows:

> We review de novo the record on appeal from a grant of a motion for summary judgment. In *Brown v. Credit Center, Inc.,* 444 So.2d 358, 362 (Miss.1983), we interpreted Rule 56 and the standards that the trial courts should use in considering a motion for summary judgment. We explained that
>
> The trial court must review carefully all of the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.

*Northern Elec. Co. v. Phillips,* 660 So.2d 1278, 1281 (Miss.1995) (citations omitted). Gulf Guaranty's arguments are analyzed according to these principles.

**A. WHETHER TAMMY DUETT IS ENTITLED TO ANY ADDITIONAL DEATH BENEFITS UNDER THE TERMS OF THE GROUP POLICY AND THE INDIVIDUAL CERTIFICATE**

**OF INSURANCE ISSUED TO BILLY DEWAYNE DUETT?**

¶7. Gulf Guaranty argues that Billy:

> purchased level credit life insurance coverage at three different levels, one for each of the three terms of coverage specified in his certificate. Billy Dewayne Duett died during the third level term of coverage, and during that term his coverage was for the level amount of $8,700.30. As a consequence, Gulf Guaranty's payment of $8,700.30 to the Bank fulfilled Gulf Guaranty's obligations under the policy and the certificate. No additional policy benefits or interest is due.

¶8. In support of this argument, Gulf Guaranty points out that the term of insurance is listed on the schedule as three annual payments of $8,700.30 each, beginning May 15, 1990. According to Gulf Guaranty, the "clear and unambiguous" language of the contract indicates that Billy purchased level insurance at three different levels, which entitled him to coverage in the following amounts: (a) $26,100.90 prior to May 15, 1990, (b) $17,400.60 from May 16, 1990 until May 15, 1991, and (c) $8,700.30 from May 16, 1991 until May 15, 1992.[1]

¶9. Guaranty also cites the master policy, which outlines the procedure for calculating the premiums for credit life insurance:

> **Premiums--Life:** The required premiums for Life Insurance for each one hundred dollars ($100.00) of "Amount of Insurance" and for each month of the "Term of Insurance--Months" are shown in the table below.
>
> ```
> Type Premium
>
> Reducing 6 2/3 cents
>
> Level 13 1/3 cents
>
> Joint Reducing 11 7/12 cents
>
> Joint Level 23 1/3 cents
> ```
>
> The premiums for other amounts of insurance and terms of insurance are in direct proportion to the premium rates quoted above.

¶10. According to Gulf Guaranty, when this provision is applied, Billy's premium under its interpretation of the policy would have been $673.90--which is exactly what Billy was charged. On the other hand, Gulf Guaranty argues that "if Duett's coverage was at one level amount for 31 months as the plaintiff argues, his total premium would have been approximately $1,095.04, almost twice what he actually paid."

¶11. To the contrary, Tammy argues that her husband purchased level insurance and that she is entitled to the entire amount of coverage--$26,100.90. To support her argument, she cites the definition of level life insurance given in the certificate of insurance, which states that level life insurance is "level for the term of coverage and is equal to the amount of insurance."

¶12. Our familiar rule of contract interpretation is that a clear and unambiguous contract will be enforced as written. *Century 21 Deep South Properties, Ltd. v. Keys,* 652 So.2d 707, 717 (Miss.1995). Furthermore, "[i]n contract construction cases our focus is upon the objective fact--the language of the

contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Heritage Cablevision v. New Albany Elec. Power System of City of New Albany,* 646 So.2d 1305, 1313 (Miss.1994) (quoting *Osborne v. Bullins,* 549 So.2d 1337, 1339 (Miss.1989)). Moreover, "[t]he familiar public policy" in this State is that "courts must interpret the terms of an insurance policy (and the statutes from which they derive) liberally in favor of providing coverage for the insured." *Aetna Cas. and Sur. Co. v. Williams,* 623 So.2d 1005, 1008 (Miss.1993).

¶13. Undisputedly, the schedule shows that Billy bought "level" insurance and that his "amount of insurance" was $26,100.90. Under the definition of level insurance in the certificate of insurance, neither the premium amount nor the "Term of Ins.--Months" entry is relevant to the calculation of death benefits. Therefore, Gulf Guaranty's arguments on this point are specious. The contract indicates that Billy's coverage was to be "level" for the "amount of insurance" of $26,100.90, which would entitle Tammy to the remaining death benefits she seeks to recover.

## B. WHETHER THE "INCORRECT PREMIUM" PROVISION GOVERNS?

¶14. In the alternative, Gulf Guaranty argues that, if its interpretation of the policy is incorrect, then this situation is governed by the "Incorrect Premium" provision of the policy. That provision states:

> **Incorrect Premium:** If the premium charge for either life or disability insurance in connection with any loan is less than the premium which should have been charged according to the rates specified above, then the maximum amount of insurance for which the company will be liable will be reduced to the amount which the premium that was actually charged would have purchased under the premium rate specified according to the term of insurance. If any excess premium is inadvertently charged, the amount of the excess shall be refunded promptly as soon as the excess is discovered.

¶15. To refute this argument, Tammy cites *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239 (Miss.1977), in which the insurance company argued that a spouse was not covered on a joint policy because the premium charged was that charged for a single coverage policy. The *Veal* court held that:

> the error in the premium was an error of the agent of defendant and **an insured may not be prejudiced by the mistake of an insurance agent if the agent made a mistake in computing the premium.** In case of a mistake in the premium being charged, defendant would be entitled to have the contract reformed to reflect the proper premium.

*Veal,* 354 So.2d at 246 (emphasis added).

¶16. Gulf Guaranty argues that this case can be distinguished from *Veal* because there was no "incorrect premium" provision in *Veal* and because Billy Duett agreed to the contract, which included this provision in the master policy. Indeed, this Court respects the right of insurer and insured to contract freely one with the other (except as limited by the public law). *In re Koestler,* 608 So.2d 1258, 1263 (Miss.1992) (overruled on other grounds) in *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658 (Miss.1994)).

¶17. However, Tammy argues that Gulf Guaranty should be equitably estopped from asserting that the premium charged was the incorrect premium. Equitable estoppel "precludes a party from denying a material fact which he has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed." *Christian Methodist Episcopal Church v.*

*S & S Const. Co., Inc.,* 615 So.2d 568, 571-72 (Miss.1993). Tammy argues that Gulf Guaranty represented to Billy that the proper premium had been paid, and that Billy relied on that representation to his detriment. In the light of the language of the contract as analyzed above, Tammy's equitable estoppel argument has merit. An insurance company which represents that certain coverage is being purchased and that the premium charged is the appropriate premium can not later deny that the premium was sufficient. *See Veal,* 354 So.2d at 246.

## C. WHETHER GULF GUARANTY'S ACTIONS JUSTIFY AN AWARD OF PUNITIVE DAMAGES?

¶18. Finally, Gulf Guaranty argues that the award of punitive damages in this case was inappropriate. In support of this argument, Gulf Guaranty states that it had a "legitimate, or at least an arguable, reason for denying the claim. There is no evidence that the conduct of any officer, agent or employee of Gulf Guaranty was in reckless disregard of the insured's rights."

¶19. Indeed, the award of punitive damages is appropriate in breach of contract cases where there is a showing of willful or malicious wrong or gross negligence or reckless disregard for the rights of others. *Peoples Bank and Trust Co. v. Cermack,* 658 So.2d 1352, 1361 (Miss.1995). However, "[t]he award of punitive damages, along with the amount of such are within the discretion of the trier of fact." *Id.* Therefore, this issue was inappropriate for summary judgment, and the award of punitive damages should have been submitted to a jury.

¶20. "Nonetheless, the trial court, in determining if the issue should be submitted to the jury, must 'decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable hypothetical trier of fact could have found either malice or gross neglect or reckless disregard.' " *Id.* (quoting *Colonial Mortg. Co., Inc., v. Lee,* 525 So.2d 804, 808 (Miss.1988)). Therefore, the issue of punitive damages is remanded to the trial court for trial on the merits--in the light of these legal principles.

## III. CONCLUSION

¶21. Under the language of the contract, Tammy is entitled to "level" coverage in the amount of "$26, 100.90." However, after the legal determination that the issue of punitive damages is properly before the trier of fact, the award of punitive damages is a matter to be determined by a jury. Therefore, this case is affirmed with regard to the actual damages and reversed and remanded for retrial with regard to issue of punitive damages only.

**¶22. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**DAN M. LEE, C.J., SULLIVAN, P.J., and PITTMAN, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur. BANKS, J., concurs in result only. McRAE, J., specially concurs with separate written opinion.**

**McRAE, Justice, specially concurring:**

¶23. I agree with the majority that Gulf Guaranty Life Insurance company was obligated under the terms of its policy to pay the total face amount of $26,190.00. Summary judgment on the issue of liability, therefore, was appropriate since there were no disputed facts. Furthermore, the arguments presented by Gulf

Guaranty were, as the majority states, "specious." The contract clearly stated that this was a level policy. The terms and conditions of its benefits provision stated, "Benefit--if this certificate provides level life insurance, the benefit is level for the term of coverage and is equal to the amount of insurance showing in the schedule."

¶24. For Gulf Guaranty now to say that this was coverage for three different levels, one for each of the three terms of coverage specified in the certificate, is truly specious. Just as we allow for the granting of partial summary judgment on the issue of liability when compensatory damages are at issue, so partial summary judgment also may be granted on the issue of liability for punitive damages. In this case, where the facts are not disputed and the Duetts are entitled to judgment as a matter of law, summary judgment on the issue of liability for punitive damages, likewise, was appropriate. It remains for the jury, however, to determine only the amount of the award necessary to punish the insurer and deter it from further unfair practices, to serve as an example to others and to compensate the Duetts for their public service in bringing the action. *Valley Forge Insurance Co. v. Strickland,* 620 So.2d 535, 541 (Miss.1993), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 635, 126 L.Ed.2d 593 (1993).

¶25. The insured contracted for a level policy, by definition, one which would cover the full amount of the loan for its duration. If the insured died, the total amount initially loaned to him would be paid. Gulf Guaranty had no arguable reason to deny that. It wrote this policy, which is a contract of adhesion. The insurer's refusal to pay the full policy benefits amounts to post claims underwriting, an act of bad faith which warrants imposition of punitive damages, the amount of which is within the province of the jury to determine.

1. However, the "amount of insurance" entry does not reflect three different terms of coverage at three different amounts. That entry states that the amount of insurance is $26,100.90.